70 So.2d 293 (1954)
BLACKBURN
v.
BROREIN et al.
Supreme Court of Florida. En Banc.
January 22, 1954.
Rehearing Denied February 26, 1954.
*294 Graham, Dixon & Flynn, Tampa, for appellant.
William C. McLean, Tampa, for Carl D. Brorein et al., appellees.
Frank Ragano, Tampa, for appellee-intervenors.
MATHEWS, Justice.
This is an appeal from a final decree made and entered by the Circuit Court of Hillsborough County.
The purpose of the suit was to obtain a judicial determination as to the status of deputy sheriffs and particularly whether or not they were employees or officers, and if employees, whether they were employees of the sheriff, or employees of the county. The suit was originally brought by Ed Blackburn, Jr., individually and as sheriff, against the members of the Civil Service Board and later certain deputy sheriffs intervened.
In and by the final decree, the Chancellor found and determined:
"1. That the Hillsborough County Civil Service law, Chapter 27601, Laws of Florida, Special Acts of 1951, which went into effect on October 1, 1951, as a whole, is constitutional and valid.
"2. The plaintiff, Sheriff of Hillsborough County, Florida, is an `Appointing Authority' within the meaning of Chapter 27601, Laws of Florida, Special Acts of 1951, being the Hillsborough County Civil Service Law, and the deputy sheriffs appointed, commissioned and paid by said Sheriff are employees coming within the classified service provisions of said Act.
* * * * * *
"4. The intervenors remain employees of the plaintiff, as Sheriff of Hillsborough County, Florida, and therefore, they are hereby reinstated and entitled to their respective salaries from January 6, 1953."
The first question to be determined is whether or not the deputy sheriffs are officers or employees. The Chancellor found that they were employees. The appellant urges that the Chancellor was in error and that deputy sheriffs are not employees but officers. The appellees urge with equal force and vigor that deputy sheriffs are employees because they are not appointed by the Governor or elected by the people, as contemplated by Section 27 of Article III of the State Constitution, F.S.A., which section reads as follows:
"The Legislature shall provide for the election by the people or appointment by the Governor of all State and county officers not otherwise provided for by this Constitution, and fix by law their duties and compensation."
The Civil Service Act for Hillsborough County is Chapter 27601, Special Acts of 1951, and is "An Act Creating a Civil Service Board for the County of Hillsborough * * * Providing for the Study of Salaries and for the Recommendations by the Board of Salary Ranges; Providing for the Manner of Employment, Promotion, Reduction, Suspension, Layoff and Discharge of Employees: * * *." The act provides for a division of employees into unclassified and classified service, for the filling of a position in classified service by the appointing authority from a list of names of persons to be furnished by the Civil Service Board, for the filling of vacancies and that "* * * no person holding an office or place in the classified service shall be removed or discharged, except for cause upon written charges and after an opportunity to be heard in his own defense. * * *" Under the law and the rules adopted by the Board, a person in one classification could not be required to perform a service in another classification. Rule 11 proposed by *295 the Civil Service Board of Hillsborough County is as follows:
"A person may, with the approval of the Board, be transferred from one position to a similar position in the same class and grade where the examinations, minimum requirements and compensation for both are equivalent. If a reduction in personnel becomes necessary, a person so transferred will have his seniority based on total service with the County."
A person classified as a criminal deputy could not be called on to serve a summons in a civil suit or a chief deputy could not be required to go out of the office and serve a search warrant.
At the common law in England there was a sheriff and an under-sheriff. The under-sheriff possessed all of the powers and duties of the sheriff. 47 Am.Jur., Article on Deputies, § 154, page 929 et seq. From the very beginning of government in this State the law has provided for a sheriff and has authorized the appointment of deputy sheriffs. Section 30.07, F.S., F.S.A., is as follows:
"Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible."
Section 4 of Article XVI of the State Constitution, among other things, provides that the "Sheriff shall either reside or have a sworn deputy within two miles of the county seat." By this section the Constitution definitely recognized the existence of deputy sheriffs.
Prior to the Constitution of 1885 the deputy sheriffs had been appointed by the sheriffs. The statutes specifically recognized the necessity for deputy sheriffs and in plain language provided for the sheriffs to appoint deputy sheriffs. The Constitution, by making special mention of a deputy sheriff in the Constitution, and by adopting all laws then in force not inconsistent with the new Constitution, provided for the appointment of such deputy sheriffs by the sheriff of each county in and by Section 30.07, F.S., F.S.A., formerly Section 4 of Chapter 1659, Laws of 1868, notwithstanding the provisions of Section 27 of Article III of the State Constitution.
In the consideration of this question it is advisable to consider the origin, history, nature, status, powers and duties of sheriffs and deputy sheriffs. In 47 Am.Jur. 821, 822, Sheriffs, Etc., § 2, the author states:
"The office of sheriff is an ancient one, dating back at least to the time of Alfred, King of England, and the holder thereof has always been the chief executive officer and conservator of the peace in his shire or county. He is a county officer representing the executive or administrative power of the state within his county. In this country, the office is generally an elective one, and anciently in England sheriffs were elected by freeholders of the county, although gradually it became the custom for the Crown to appoint the sheriff."
In 47 Am.Jur. 929, 930, 931, Deputies, § 154, the author states:
"The office of under or deputy sheriff if a common-law office; and this is the rule unless a change is effected by the Constitution or statute law of the state. In the most ancient times of the English common law, the sheriff had his under sheriff; and such deputy, when appointed, was vested with authority to perform every ministerial act that the principal sheriff could perform. Under modern jurisprudence the status of the deputy is in many respects the same. He acts for the sheriff in his name and stead. He is the sheriff's agent and as such agent he may do any ministerial act that his principal may do. He holds an appointment as distinguished from an employment. In the absence of any statutory restriction, the sheriff has full power to appoint his deputy, and he may clothe him with his ministerial duties *296 as effectually as he could constitute him his agent to attend to private business for him as an individual. For instance, the service of a search warrant, which is directed to a sheriff, by his deputy is the act of the sheriff whether he is personally present or not.
"* * * Where so clothed with power, a deputy sheriff is a public officer, although he may not be a state or municipal officer within the meaning of constitutional provisions. * * *"
A deputy is a person appointed to act for another and he may do anything that his principal may do. A deputy is a substitute for another and is empowered to act for him in his name and behalf in all matters in which the principal may act. The principal is responsible for the acts of his deputy and the authority of the deputy ceases upon the latter's death or disqualification. Statutory authority is not necessary to enable a public official to appoint sufficient deputies to perform the duties of his office. See 43 Am.Jur. 218, 219, Public Officers, § 460.
The case of Shad v. De Witt, 158 Fla. 27, 27 So.2d 517, 520, involved the Civil Service Law applicable only to Duval County, but it is very similar to the Hillsborough County Act. That case is cited by the appellees as authority that all similar civil service acts are constitutional and is controlling in this case. That case was a taxpayer's suit and the Court pointed out that the appellant was not an officer or employee or a candidate or an applicant for any position with the County of Duval. In upholding the Duval County Civil Service Act against the general attack by a taxpayer, this Court said:
"* * * When the general plan is borne in mind and persons holding the positions defined as `unclassified' are eliminated it is plain that persons serving the county in the remaining places were not intended by the legislature to include anyone exercising a part of the sovereign authority of the state, hence occupying a post of such dignity as to fall within the meaning of this section of the Constitution. We are confirmed in this view by the phraseology of the title of the act, which specifically describes it as one providing civil service for employees. From this and from the provision for the exclusion of certain officers and others performing technical service and the like, making the act operative only on the remainder, we are convinced that there was no intention on the part of the legislature for the law to affect officers in the true sense of that word. In any event, should it eventually develop that one exercising the prerogatives or performing the duties of the character rendering him an officer, as that word has been defined by this court in construing the Constitution, the matter of the efficacy of the act in the particular instance may then be litigated and decided." (Emphasis supplied.)
In the case now before the Court the suit was brought by the sheriff who is an officer of Hillsborough County and is the chief executive and law enforcement officer of the county, clothed with important duties and responsibilities. In addition, the powers, duties and prerogatives of the sheriff are exercised in the performance of duties by deputies, of a character which renders them officers, and the efficacy of the act in question may be litigated and decided upon the facts before us.
The falacy of the theory advanced by the appellees is that there can be no officer unless he is elected by the people or appointed by the Governor, as provided for by Section 27 of Article III of the State Constitution. The election by the people or the appointment by the Governor is not the true test in determining whether or not an office exists and the individual filling the position is an officer or an employee.
In the case of State ex rel. Clyatt v. Hocker, 39 Fla. 477, 22 So. 721, 723, this Court cited many cases and then summarized the definitions and essential elements of the term "office" as follows:

*297 "`The term "office" implies a delegation of a portion of the sovereign power to, and possession of it by, the person filling the office; a public office being an agency for the state, and the person whose duty it is to perform the agency being a public officer. The term embraces the idea of tenure, duration, emolument, and duties, and has respect to a permanent public trust to be exercised in behalf of government, and not a merely transient, occasional, or incidental employment.'"
In the case of Holland v. Mayes, 155 Fla. 129, 19 So.2d 709, 710, with reference to deputy sheriffs, in an opinion by Mr. Justice Terrell, the Court said:
"Section 30.07, Florida Statutes of 1941, F.S.A., authorizes the Sheriff to appoint deputies, clothes them with the same power as the Sheriff and makes the Sheriff responsible for their negligent acts. * * *
"* * * The Sheriff acts through his deputy, is charged with knowledge of his acts and consents to all acts done officially or under color of his office." (Emphasis supplied.)
Probably the highest executive duty imposed upon a sheriff is that of taking a human life pursuant to lawful authority. In the case of Buchanan v. Chapman, 108 Fla. 280, 146 So. 585, 586, this Court held:
"We now hold that the duty under the provision of the statutes above referred to to execute the death sentence devolves upon the superintendent of the state prison, if he is present and not disabled; but, in the case of his absence, death, or disability, the judgment may be executed by the sheriff of the county where the conviction was had or by such sheriff's deputy in the absence of the sheriff. That part of the statute providing, `The superintendent of the State prison or some authorized deputy by him to be designated,' is construed to mean a deputy authorized under the statute, which deputy is either the sheriff of the county where the conviction occurred or his authorized deputy. * * *
"* * * The sheriff of the county of conviction is the statutory deputy executioner." (Emphasis supplied.)
The case of State ex rel. Rauscher v. Gandy, 130 Fla. 407, 178 So. 166, 167, related to Chapter 12002, Acts of 1927, F.S.A. § 146.01 et seq., concerning the appointment, duties and compensation of traffic officers. An alternative writ of mandamus issued from this Court to require the sheriff to name a certain person as deputy sheriff, upon the recommendation of the county commissioners, to act as a traffic officer under said act. The Court quashed the alternative writ and, in doing so, said:
"* * * The statute contemplates that reasonable recommendations by the county commissioners for the appointment by the sheriff of suitable deputies for employment by the county commissioners as `traffic officers' shall be observed by the sheriff so that traffic regulation may be made effective. But the sheriff has a right to select his deputies for whose official acts he is responsible, and the statute cannot legally require the sheriff to appoint a deputy upon the recommendation of the county commissioners if the sheriff has a valid objection to making the appointment, since that would be an attempt to impose upon the sheriff responsibility for acts of the deputy without the consent of the sheriff."
The duties, powers, prerogatives and responsibilities of sheriffs are imposed upon such officers by law. Sheriffs are specifically authorized to appoint deputies to act for them and such deputies shall have the same power as the sheriff appointing them.
The principal contention of the appellees is that the deputy sheriffs are not officers because they are not elected by the people or appointed by the Governor, under Section 27 of Article III of the State Constitution. There can be no appointment by the Governor or election by the people unless the Legislature has first provided for *298 such appointment or election. The Legislature has never seen fit to provide for the election by the people, or appointment by the Governor, of deputy sheriffs. The section in question does not provide for the election or appointment of all officers but only those "not otherwise provided for by this Constitution." The appointment of deputy sheriffs by sheriffs is otherwise provided for by the Constitution. The Constitution required that there should be a sheriff in each county, recognized the office of deputy sheriff, and the statute, Section 30.07 F.S., F.S.A., in full force and effect at the time of the adoption of the Constitution, is still in full force and effect. This statute requires the appointment of deputy sheriffs by the sheriffs.
Section 20 of Article III of the State Constitution prohibits the Legislature from passing special or local laws regulating the jurisdiction and duties of any class of officers except municipal officers. Deputy sheriffs are a "class of officers". The sheriffs of the State constitute a class of officers. The act in question is "An Act Creating a Civil Service Board for the County of Hillsborough". No attempt was made to disguise the act as a general law. It is written into the very title of the act and the body of the act that it relates to Hillsborough County and Hillsborough County alone. It attempts to limit and regulate the jurisdiction and duties, not only of the sheriff but also, of deputy sheriffs and therefore is in plain violation of Section 20 of Article III of the State Constitution.
Section 15 of Article IV authorizes the Governor to suspend all officers appointed or elected for certain specified reasons. Under this section sheriffs may be suspended by the Governor but deputy sheriffs cannot be suspended by him.
There is a reason for the constitutional provisions and statutes with reference to sheriffs and deputy sheriffs. In our scheme of constitutional government we find throughout an attempt to place responsibility upon a particular officer or a particular class of officers. The supreme executive power of the State is vested in a chief executive styled the Governor. There can be only one Governor upon whom the people can place responsibility. He is clothed with the appointing power in many cases and he is responsible for his assistants. The judicial power is vested in the Courts and that power cannot be shared with the executive or legislative power. It is essential to law enforcement in the various counties of the State that the people shall be able to place responsibility upon a particular individual, the sheriff. He and he alone appoints his deputies and is responsible for them. It was never contemplated that the sheriffs of the state must perform the powers and duties vested in them through deputies or assistants selected by someone else.
In this case we have a striking example of what could be the result of forcing sheriffs to take deputies not of their own choosing. The deputy sheriffs who are parties to this cause were deputies under a former sheriff. The present sheriff was elected as a result of a heated and vigorous campaign in which he pledged to the people of Hillsborough County a "change in policy." How could the sheriff keep his promise to the people if he must accept the same deputies selected by a former sheriff or if he is compelled to select new deputies from a list certified to by a board which may not be in sympathy with his policies? Under such a scheme the hands of the sheriff could very well be tied and he could not keep any promise he might have made. The Governor may suspend the sheriff because of flagrant violations of the law where no attempt is made at enforcement. The sheriff may offer the excuse that he was not able to select his own deputies and for that reason he was not able to properly perform his duties. The Governor would have no power to suspend the deputies. Instead of centralizing authority with reference to law enforcement in a county and enabling the people to place responsibility, the plan with reference to sheriffs and deputy sheriffs, attempted to be authorized by the act, would create confusion and make it impossible for the people, or the Governor, to fix with any degree of certainty responsibility for failure of law enforcement.
*299 Civil Service laws for public employees have been widely approved and such laws have served a most useful purpose in giving to such employees security and protection. It is unnecessary to discuss the value of these laws to countless thousands of employees. It is not within our province to shape the public policy with reference to this matter. We have for consideration fundamental provisions of the organic law which affect one of the vital functions of government  law enforcement  and the status of the individuals charged with this high public duty.
The Act, Chapter 27601, Laws of Florida, Special Acts of 1951, contains the usual clause as follows:
"The provisions of this Act shall be severable, and if any of the provisions shall be held to be unconstitutional the decision of the court shall not affect the validity of the remaining provisions. * * *"
By holding that the Act is unconstitutional as it relates to sheriffs and deputy sheriffs, we do not mean to hold that it is unconstitutional as to all employees. There may be such persons employed by the sheriff as typists, stenographers, bookkeepers, cooks for the jail, janitors, or others who are not deputy sheriffs, and whose duties and powers constitute no part of the sovereign power. Our opinion is limited to the questions of deputy sheriffs and sheriffs. We hold that deputy sheriffs are officers and as such are not subject to Civil Service regulations provided by Chapter 27601, Special Acts of 1951, and that sheriffs are not limited or regulated by said Act in appointing deputy sheriffs. Insofar as Chapter 27601, Special Acts of 1951, attempts to regulate deputy sheriffs and sheriffs, as pointed out herein, said Act is unconstitutional and void.
Having reached the conclusion which we have, it is unnecessary to discuss or decide other assignments of error.
Reversed.
ROBERTS, C.J., and THOMAS, SEBRING and DREW, JJ., concur.
TERRELL and HOBSON, JJ., dissent.
TERRELL, Justice (dissenting).
The only point in this case is whether or not deputy sheriffs in Hillsborough County can be placed under civil service in the manner provided by Chapter 27601, Acts of 1951. It is admitted that said act is a local law so it is unnecessary to labor that point. Neither is it necessary to labor the point of whether deputy sheriffs are officers or employees, their powers and duties are defined by Section 30.15, Florida Statutes 1951, F.S.A., some of which may be termed those of an officer, while many others are clerical and could not be termed other than those of an employee. They are appointed by the sheriff, under section 30.07, Florida Statutes 1951, F.S.A., and may be hired and fired as often as he changes his collar if he so desires. Section 4, Article XVI of the Constitution, requires that the Sheriff "reside or have a sworn deputy within two miles of the county seat." This is the only reference to them in the constitution.
The majority opinion holds that Chapter 27601 is violative of Section 20, Article III of the Constitution, in that "it attempts to limit and regulate the jurisdiction and duties" of deputy sheriffs. It is true that this section of the constitution inhibits "regulating the jurisdiction and duties of any class of officers, except municipal officers" by local law, but we are not concerned here with the "jurisdiction and duties" of any class of officers. Civil service has to do with qualification only, which is a very different matter from "jurisdiction and duties".
Deputy sheriffs are creatures of the legislature. It is only by inference that they are referred to in the constitution. To contend that the legislature can create an office or an employment but cannot impose reasonable qualifications as a prerequisite to holding it, is too ridiculous to quibble *300 about. The contention that the sheriff should be permitted to select his own deputies and should not be required to accept those designated by his predecessor may be a reasonable deduction but it is a question of policy vested solely in the legislature. Likewise the whole theory on which the majority opinion is fortified is, in my opinion, one of policy which is no concern of this Court.
There is a very respectable body of opinion in this country which holds that both constitutional and statutory officers may be placed under civil service but I know of no authority but this Court which holds that statutory officers may not be so placed. It is being done at every level of government in this country, national, state, county, and municipal. In this state the Crippled Children's Commission, the State Department of Public Welfare, the State Board of Health, the Industrial Commission, the Hospital Division of the Improvement Commission, all of which are legislative creations, are under different phases of civil service, directed by the Merit System Counsel, a legislative creation which passes on the qualification of 2500 to 3000 officers or employees, some of which exercise important administrative functions. Road Patrolmen who perform similar duties to those of deputy sheriffs are under civil service as are teachers under Teacher Tenure Acts and many others.
The spread and growth of our industrial economy and the advent of the organized criminal call for new and approved techniques for apprehending and bringing wrongdoers to justice. These and other factors have made the administration of the sheriff's office much more difficult and complex than it has been before. This is particularly true in populous communities, known to be the rendezvous of law evaders, anti-social factors and conditions that contribute to the burden of the sheriff's office. It is a matter of common knowlege that these and other elements have contributed to making the sheriff's office of Hillsborough County one of the most difficult in the State to perform. Being local in application it may be reasonably assumed that Chapter 27601 was enacted at the request of the people of Hillsborough County in the hope that the training required of deputy sheriffs under civil service would equip them to perform their duties more efficiently.
To say that the legislature cannot impose reasonable qualifications on the holder of an office, that it has the sole power to create and do so under the guise that "jurisdiction and duties" comprehends "qualification" is an application of constitutional precepts that I find no authority for. The point is so academic that citation of supporting authority is unnecessary. Placing deputy sheriffs under civil service does not cut off the power of the sheriff to appoint them. It requires him to appoint them from a list whose qualification has been tested by a school of training that will alert them to the responsibility imposed on them. The sheriff may also dismiss a deputy for cause, upon filing written reasons for dismissal with the Civil Service Board and giving the one dismissed an opportunity to be heard. To say that the legislature cannot impose reasonable qualifications on law enforcement officers because of constitutional impediment, in effect, makes the constitution a shield for the law breaker when it was intended to be a shield for the law observing citizen.
In fine, the majority view commits the Court to the rule that deputy sheriffs are in a preferred class on whom no special qualification can be imposed to enable them to cope with the complex conditions that confront them. It matters not how inadequately they may be prepared to meet the exigencies of the situation or to what extent appointments may be brought about by the outmoded "backscratching" process, the Constitution imposes an impassable barrier to improving the situation. I cannot read any such meaning into the Constitution. Even if the point was close, which I do not think it is, the legislative act should be upheld. This Court is not the sole guardian of the Constitution. The legislature takes the same oath to support it that we do. Its acts are clothed with the presumption of validity and, as pointed out *301 in Ball v. Branch, 154 Fla. 57, 16 So.2d 524 and many other cases, any doubt should be resolved in favor of the validity of its acts. See also State ex rel. Glover v. Holbrock, 129 Fla. 241, 176 So. 99; State ex rel. Landis v. Wheat, 103 Fla. 1, 137 So. 277 and Shad v. DeWitt, 158 Fla. 27, 27 So.2d 517.
For these and other reasons I think the majority opinion is a clear invasion of the legislative field and a gross abuse of the judicial function. I therefore dissent.
HOBSON, J., concurs.