[No. 27802. Department Two. June 13, 1940.]

THE STATE OF WASHINGTON, *Appellant,* v. CLIFF YELLE, *Respondent.*[1]

*Ralph Smythe* and *Max Church,* for appellant.

*Thos. L. O'Leary,* for respondent.

[1]Reported in 103 P. (2d) 372.

JEFFERS, J.—The defendant, Cliff Yelle, was, by an information filed by the prosecuting attorney of Clallam county, June 5, 1939, charged with the crime of nonfeasance in office, in that defendant, being the duly elected, qualified, and acting state auditor of the state of Washington, willfully failed and neglected to examine any or all of the financial affairs of the several public offices and officers of Clallam county during the fiscal year beginning January 1, 1937, and ending December 31, 1937, and particularly failed and neglected to examine into the financial affairs of the county treasurer and county auditor, and further willfully failed and neglected to file a report showing an examination of the county of Clallam, either in the office of the state auditor and attorney general of the state of Washington, or the office of the auditing department of Clallam county, or any of them.

To this information, the defendant interposed a motion to set aside the information and a demurrer thereto, subsequently filing an amended demurrer, which latter demurrer sets forth five grounds, as follows: (1) That the information does not substantially conform to the requirements of the statutes of the state of Washington; (2) that more than one crime is charged therein; (3) that the facts charged do not constitute a crime; (4) that from the information it appears that the superior court for Clallam county has no jurisdiction of the offense attempted to be charged therein, and that it likewise appears from the information that the above named court has no jurisdiction of the defendant; (5) that the information contains matter which constitutes a defense as well as a legal bar to the action.

After written briefs had been submitted and considered by the trial court, together with the oral arguments, the court, on September 15, 1939, entered an

order sustaining the demurrer. The order does not state the specific ground upon which the demurrer was sustained: On the day last above mentioned, the parties appearing in court, and the prosecuting attorney in open court having stated that he did not desire to plead further, a judgment was entered dismissing the action, and this appeal by the state followed.

Error is assigned upon the sustaining of respondent's demurrer and the dismissal of the action.

While, as we have stated, the order sustaining the demurrer did not set out the grounds for the court's action, however, as shown by the memorandum opinion of the trial court, and as admitted by counsel, the demurrer was sustained for the reason and upon the ground that, under the information, Clallam county had no jurisdiction over respondent, Cliff Yelle, as auditor of the state of Washington, but that such a charge must be brought in Thurston county, where the officer is, under the law, compelled to maintain his office.

The sole question presented here is whether or not the venue was properly laid in Clallam county, which, of course, raises the question of where the crime was committed, if one was committed.

It is the contention of appellant that the respondent was required to make the audit in Clallam county, and that, as the duty to act was in Clallam county, the venue of this action, which is based on his willful failure to act, was properly laid in Clallam county.

On the other hand, respondent contends that, if any crime was committed, it was committed in Thurston county, where respondent is required to maintain his office.

Rem. Rev. Stat., § 9958 [P. C. § 6612], in so far as applicable, provides:

"The state auditor, a deputy state inspector and supervisor, and every state examiner shall have power by himself or by any person legally appointed to perform the service, to examine into all financial affairs of every public office and officer; such examination of the financial affairs of townships, incorporated cities and towns and school districts shall be made at least once in every two years; all other examinations shall be made at least once a year. . . . A report of such examination shall be made in triplicate, one copy to be filed in the office of the state auditor, one in the auditing department of the taxing district reported upon, and one in the office of the attorney general. . . ."

Rem. Rev. Stat., § 2268 [P. C. § 8703], provides:

"Whenever any duty is enjoined by law upon any public officer or other person holding any public trust or employment, their willful neglect to perform such duty, except where otherwise specially provided for, shall be a misdemeanor."

It is because of the claimed violation of the duty imposed upon the state auditor by § 9958, *supra,* and under the authority of § 2268, *supra,* that this action is brought.

Article I, § 22, of the state constitution provides in part that, in a criminal prosecution, the accused shall have the right to a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed.

Rem. Rev. Stat., § 2012 [P. C. § 9394], provides:

"Except as otherwise specially provided by statute, all criminal actions shall be commenced and tried in the county where the offense was committed."

We think it extremely doubtful if the information does, in fact, allege that the respondent, being physically present in Clallam county, failed to audit, etc. However, the trial court in its memorandum opinion

states: "But it is conceded by everybody that the auditor actually never was in Clallam county in connection with the facts of this case." While the appellant in its brief does not make that concession, it does state:

"It may be assumed for the purpose of this inquiry that the defendant was not during the time charged in the information, ever personally and actually within the territorial limits of this county."

Without deciding whether or not the venue would have been properly laid in Clallam county had respondent been physically present in that county, and therein refused to make the audit, we proceed upon the theory that respondent was not physically present in Clallam county at any time charged in the information in connection with the matters therein referred to.

While appellant contends that the superior court of Clallam county, and Clallam county alone, has jurisdiction herein, our attention is called to Rem. Rev. Stat., § 2013 [P. C. § 9391], which deals with offenses committed partly in one county and partly in another, and a number of cases are cited in connection therewith. We do not believe the section referred to or the authorities cited are pertinent; as, in our opinion, the crime charged, if a crime is charged, was committed wholly in either Clallam or Thurston county.

Appellant, in its opening and reply briefs, cites many authorities from other jurisdictions, which it is contended support its contention that this action was properly brought in Clallam county. Many of the authorities deal with prosecutions against husbands and fathers for failure to support their wives and children. As typical of this class of cases, we mention the cases of *State v. Borum,* 188 La. 846, 178 So. 371, and *State v. Dvoracek,* 140 Iowa 266, 118 N. W. 399.

In the *Borum* case, the defendant was prosecuted in Monroe, Louisiana, for the willful nonsupport of his

minor children, who at the time of the prosecution were residing at the home of the wife's father at Natchez, Mississippi. The opinion states the defendant was residing in Monroe at the time he was charged with neglecting his children and at the time of his prosecution for such neglect. The opinion further states:

"Willful nonsupport of minor children by their father is a continuing offense. *State v. Morel,* 146 La. 6, 83 So. 318. . . . The offense is committed at the place where the father may be found within the state, and not at the place of residence of the children. *State v. Blache,* 175 La. 718, 144 So. 430. . . .

"Defendant's duty to support his minor children accompanied him wherever he went. . . .

"The offense of nonsupport of children is not dependent upon the commission of any affirmative act, but on the omission of the plainest natural duty. Necessarily, then, the venue of the offense depends on wherever the omission to perform the duty occurs, which in defendant's case was in Monroe, La., during the period elapsing between September 1, 1934, and April 15, 1935. Defendant owed no such duty elsewhere."

Appellant quotes from *State v. Dvoracek, supra,* as follows:

"The statute under consideration, save the portion in relation to abandonment, is essentially negative. The penalty is denounced, not on the commission of any affirmative act, but on the omission of the plainest duty. Necessarily, then, the venue depends on where the omission to perform the duty occurred."

After the quoted portion, we find the following statement as to the facts:

"The accused had settled with his family in Story County. Neither he nor they had done anything to change that residence. This being so, it was his duty as husband and father to provide for them and furnish them with food, clothing, and shelter at their place of residence in Story County."

There is a conflict of authority in the decisions on the question of venue in proceedings to enforce support of a wife and minor children. In *Poindexter v. State*, 137 Tenn. 386, 193 S. W. 126, in referring to this conflict, the court stated:

"It is said in Ruling Case Law that this conflict may be explained by the different provisions of the statutes; that some of the statutes have for their chief and primary purpose to prevent the neglected wife or child from becoming a charge upon the county; that prosecutions under such statutes should be brought in the county where the wife or child resides, since the purpose is to prevent that county from having to support the wife or child. Other statutes have for their primary purpose the protection of the dependent wife or child by punishing the delinquent husband and father to deter others from being guilty of the same wrong. Under the latter statutes the venue should be laid in the county where the husband or father resides and where he is under legal as well as moral obligation to provide for his family. . . .

"In view of this construction that has been given our statute, we think the venue of this offense was properly laid in Davidson county, where the father resided."

We have quoted from the cited cases somewhat at length to show that they are of little value to aid us herein, depending, as they do, upon statutory construction in the various states, and upon what is claimed to have been the purpose of the statute.

We have been cited to no case from this state involving nonsupport of a wife or minor children, where the question of venue was raised.

The case of *State v. Graham*, 190 La. 669, 182 So. 711, cited by appellant, is, in our opinion, authority for nothing more than that, under the statutes of Louisiana defining the crime of misprision of felony, an action would not lie under the statute for concealing facts relating to a murder committed in Mississippi, the com-

plaint alleging the murder was committed in Mississippi and not in Louisiana.

In *Grant v. State,* 47 Ga. App. 234, 170 S. E. 394, cited by appellant, the defendant Grant was convicted of a misdemeanor (larceny from the house). It was shown that Grant was not personally present when the theft was actually committed, but that he counseled and encouraged those who did commit the act and promised to buy the articles stolen. The following syllabus by the court covers the situation:

"A person who counsels and encourages the commission of a misdemeanor by promising to buy the fruits of a larceny is guilty as a principal, although he did not act as one of the actual perpetrators of the crime, and he may be tried in the county in which the larceny was committed, although he lives in another county."

In *People v. Richardson,* 138 Cal. App. 404, 32 P. (2d) 433, also cited by appellant, the question involved was the constitutionality of an act which provided that jurisdiction of a criminal action for escaping from prison is in any county in the state. Defendant had been committed to San Quentin. While working in a road camp in Butte county, he escaped. He was apprehended in Los Angeles county and returned to San Quentin. He was tried and convicted in Marin county, on the charge of escape. Defendant contended he had a constitutional right to be tried in either Butte county, where he escaped, or in Los Angeles county, where he was apprehended. The act authorizing defendant to be tried in any county was held not to offend against the constitution, the court quoting from *Ex parte McDonald,* 20 Cal. App. 641, 129 Pac. 957, as follows:

" 'The authorities cited to the effect that the trial must be in the county wherein the offense was committed, have no application in this state, where under

the Constitution the place of trial is subject to legislative determination.'"

In *Andrade v. United States,* 16 F. (2d) 776, cited by appellant, the criminal act was committed in two different districts, and the court held that, under the Federal statutes, a criminal offense begun in one district and completed in another is cognizable in either.

It is also claimed by appellant that it is the general rule that, in prosecutions for embezzlement, the action must be brought in the county where the defendant was required to account. As typical of this class of cases, and the only case cited from this state, is the case of *State v. Whiteman,* 9 Wash. 402, 37 Pac. 659, where the defendant was charged with embezzling certain funds which came into his hands as assignee. We find in the opinion the following statement:

"It is further claimed on the part of the appellant that the conviction cannot stand by reason of the fact that there was no proof that the crime was committed in the county of Pierce. The proof upon that subject was simply that all of the transactions by which the money came into the possession of the defendant took place in the county of Pierce, and that all of his duties growing out of his trust should have been performed in said county."

While many statements can be found in the books to the effect that the venue of an action for failure to perform a duty is in the county where the duty was to be performed, an examination of the cases discloses in almost every instance that the facts show, as in the *Whiteman* case, *supra,* that some part of the act constituting the crime was committed in the county where it is held the venue should be laid, or the decision of the case depends upon the interpretation of a statute; so that, after a consideration of all the cases cited by appellant, we are of the opinion they do not show such

a uniform rule, when considered in connection with the facts as alleged in the information, as to be in any way controlling upon us in the instant case.

The only case cited herein, or which we have been able to find, where it was sought to prosecute criminally a state officer for failure to perform a duty, in which no corrupt practice was involved, is the case of *State ex rel. Schwenker v. District Court*, 206 Wis. 600, 240 N. W. 406. Appellant, on page thirty-five of its brief, contends that the complaint in the *Schwenker* case charges the commissioner of banking with acting corruptly. We are unable to so understand the complaint, but believe, as will hereinafter appear, that the charge was a willful failure to perform a duty imposed by law. Appellant, on page fifteen of its reply brief, admits that the decision in the cited case was right, stating: "If there was any duty breached in the *Schwenker* case it was to properly exercise discretion in Milwaukee county." The trial court was of the opinion that the cited case was applicable, and that the reasoning was sound.

Appellant's principal objection to the *Schwenker* case is that, in that case, the duty to examine banks was discretionary, while in the instant case, the duty of the state auditor to audit is mandatory. Before passing to a discussion of the cited case, may we call attention to Rem. Rev. Stat., § 10996 [P. C. § 6581], which provides that the state auditor *shall reside and keep his office at the seat of government.*

It should also be kept in mind that Rem. Rev. Stat., § 9958, which prescribes the duty of the state auditor relative to the examination of county offices, contains no provision for a penalty for failure to make such examination, nor does it contain any express provision as to where the audit shall be made; also that this

prosecution is based upon § 2268, *supra,* for failure to perform the duty imposed by § 9958, *supra.*

Referring now to the *Schwenker* case, *supra,* it may be conceded that the statute which imposed upon the commissioner the duty to examine banks vested in him some discretion. However, we are of the opinion a careful reading of the cited case will show that, in reaching its conclusions, the court at least assumed, in so far as the opinion related to venue, that the allegations of the complaint were sufficient to show a duty on the part of the commissioner, which he had failed to perform. We quote from the statement of facts preceding the opinion in the cited case:

"Petitioner, while state banking commissioner, was charged with having on the 6th day of November, 1930, in the county of Milwaukee, knowingly, willfully and feloniously violated the provisions of sec. 220.08, which authorizes and requires such officer, when it appears to him that any bank has violated its charter or any law of the state, or has been conducting its business in an insolvent or unauthorized manner, or if its capital has become impaired, or if from an examination of the books said commissioner had reason to conclude that such bank was in an unsound and insolvent condition to transact the business for which it was organized, or inexpedient for it to continue, or if it had neglected or refused to observe any order of said commissioner specified in sec. 220.07, Stats., forthwith to take possession of the property and business of said bank until such bank should resume business or its affairs be finally liquidated, in that said commissioner, with full knowledge of violations of law on the part of the Franklin State Bank and that it was conducting its business in an insolvent and unauthorized manner, that its capital was impaired, that it was in an unsound and insolvent condition to transact business, to have on numerous prior occasions neglected and refused to observe the orders of the commission, he did willfully and feloniously fail, neglect and re-

fuse to close said bank and take over its affairs as authorized and required by law . . .

"A warrant was issued upon this complaint and an arrest made. The following plea in abatement was interposed:

" 'That the state of Wisconsin should not further prosecute . . . for the following reason, to wit: that if any offense was committed as charged in said complaint which the defendant expressly denies, such offense was not committed within the county of Milwaukee, Wisconsin.'

"The plea was duly verified, showing that petitioner was a resident of the city of Madison, Dane county, that the offices of the commissioner of banking are at Madison in Dane county, the capital of the state; and that on the 6th day of November, 1930, he was at his office and not at any time on that day in the county of Milwaukee."

It will be noticed that the only question raised in the cited case is one of venue, and that the allegations set out in the plea of abatement relative to residence and location of the office of the commissioner are, in so far as the state auditor in the instant case is concerned, covered by statute, and that this court can take judicial knowledge of the fact that the residence of the state auditor is in Thurston county, and that he is required to keep and conduct his office at Olympia. In our opinion, the same question was raised by the demurrer in the instant case as was raised by the plea of abatement in the cited case.

Upon the record made in the cited case, a permanent writ of prohibition was granted after an alternative writ had been granted, and after a hearing on a motion to quash the alternative writ had been heard and denied. We quote from the opinion in the cited case:

"The complaint does not suggest that respondent entered into any combination or conspiracy with the officials of the bank. He is charged with having neglected or failed to act at a given time on information

alleged to have been in his possession and as the duties of his office requires of him.

"An orderly disposition of this case requires an answer to the question as to where the venue is to be laid. If an offense known to the law is stated, does the record show it to have been committed elsewhere than in Milwaukee county? If so, the writ in this instance is properly granted and the case, at least for the present, is at an end. . . .

"We are dealing with a case in which the head of one of the state's important departments is charged with failure to administer his office effectively, and by so failing 'did knowingly, wilfully, and feloniously violate those provisions of law set forth and contained in sec. 220.08 of the Revised Statutes.'

"Sec. 7, art. I, Const., in part reads:

"'In all criminal prosecutions the accused shall enjoy the right . . . to a speedy public trial by an impartial jury of the county . . . wherein the offense shall have been committed, . . . previously ascertained by law.'

"Sec. 356.01, Stats., provides: 'All criminal cases shall be tried in the county where the offense was committed, except where otherwise provided by law.'"

It will be noticed that the constitutional and statutory provisions of Wisconsin are the same as those of Washington.

We quote further from the opinion in the cited case:

"There are crimes which may be committed by one in a county in which he has not been physically present. Appellant has cited such cases as *Simpson v. State*, 99 Ga. 41, 17 S. E. 984 [a case which held that the offense of shooting at another had been committed in Georgia where one in South Carolina fired a shot at another in a boat on the Savannah river, within thirty yards of the Georgia side, the river at that point being 175 yards wide], and *Adams v. State*, 164 Wis. 223, 159 N. W. 726 [a prosecution for failing to support minor children—one of the cases cited by appellant herein]. These and other cases turn on the proposition that in legal contemplation a crime is committed

in the place where the doer's act takes effect. Such cases are distinguishable from the one under consideration. Here the respondent is charged, as the record stands, with having while in his office at Madison, where the law requires him to have his office and dispatch his work, determined with evil intent to refuse to perform a duty imposed on him by law. Had he there determined that it was his duty at that particular time to close the bank in the ordinary course of events, either he or some assistant representing him would have proceeded to Milwaukee. But the mental processes which are claimed as the foundation for this prosecution and the evil intent accompanying were initiated and concluded in Dane county."

The court in the cited case then discussed the question of public policy and the effect on state government if such an officer could be required to answer a criminal charge for failure to act in each county.

Referring again to the cited case:

"As suggested, he is not charged with conspiring with any officer of the bank to the hurt of any one, or corruptly gaining any advantage to himself by reason of which the solvency of this bank was affected. Such a charge would, of course, be based on facts differing from those before us and might bring one so accused within the rule that a crime may be committed by one in a location in which the accused has never been physically present. But the facts in this case limit the activities, so far as this complaint is concerned, on the part of the accused, to his office in the city of Madison and requires the holding that if any prosecution is to follow it must be in Dane county."

It is true that, in the cited case, the court, after reaching its conclusion as to venue, discussed the complaint and its effect, and stated that, in order to sustain the complaint, certain evidence would have to be offered; but these statements, in our opinion, were in no way necessary to the conclusion reached, that the venue should be laid in Dane county.

■ We have recognized that it is against public policy to permit the state or its constitutional officers to be sued in any county of the state other than in Thurston county, where the officers referred to are by law required to keep their offices, and where we believe, in contemplation of law, their statutory duties are to be performed.

We do not desire to be understood as holding or contending that public policy should control valid statutory enactments; but where, as in the present case, we have no express statutory provision that, where the charge is a failure to perform a duty imposed by statute, the venue shall be in the county where the duty is to be performed, and where our constitutional and statutory provisions are to the effect that all criminal actions shall be tried in the county where the offense was committed, and where there seems to be no established rule which would seem to be applicable to the facts as pleaded in the information, we believe it proper to consider public policy, to the extent at least of determining what the possible and probable effect of a contention, such as made by appellant, as to where the venue should be laid, would have on the business of the state, and also in considering the authority to support the contention advanced by appellant.

We are not impressed with appellant's contention that this respondent would escape any legal liability if not brought to trial in Clallam county.

■ We must keep in mind that, this being a criminal action, the statutes are to be strictly construed.

■ Without in any manner intimating that the office of the state auditor is not required to comply with the statute relative to the many duties cast upon it, we are of the opinion that the legislature knew and appreciated, as evidenced by the sections hereinbefore referred to, and especially § 9958, *supra,* that the state

auditor could not and would not personally go out over the state making the examinations required to be made by his office, but it was undoubtedly known and understood that such examinations would be made by deputies, or examiners, or whatever they may be called. We do not believe it is to quibble to say that, in our opinion, it was not the intent of the legislature to cast upon the auditor this burden of personally making the examinations, and this being true, in a criminal prosecution such as this, where the state auditor is personally charged with failure to make the audit, we seriously doubt that there are sufficient allegations in the information to show a willful failure on the part of the auditor to cause an examination to be made.

However, whether this be considered a failure of the state auditor to cause an examination to be made, or the failure of the auditor to personally make the examination, we are firmly of the opinion that the crime, if there was a crime committed, was committed in Thurston county, and that a criminal prosecution for nonfeasance in office of a state officer, required by law to reside and keep his office at the capital, in Thurston county, must be instituted in Thurston county. By being charged with nonfeasance in office, a defendant is charged with mentally deciding not to do a certain thing, this decision being willful. This mental operation under a charge of nonfeasance, such as here before us, we believe can and should be held to have been initiated and concluded in the office of the state auditor, in Thurston county; and this being true, we think it should be held that the crime, if one was committed, was committed in the office of the auditor, in Thurston county, and not in Clallam county. We think such a conclusion will not allow a state officer to avoid the consequences of failure to conduct his office according to law, and we also believe

it will carry out the intention of the legislature relative to place of trial of a criminal action.

For the reasons herein stated, the judgment is affirmed.

BLAKE, C. J., BEALS, and STEINERT, JJ., concur.