[No. 33771. Department Two. June 13, 1957.]

THE STATE OF WASHINGTON, *on the Relation of John Day et al.,* *Appellants,* v. KING COUNTY *et al., Respondents.*[1]

*Herbert L. Onstad* and *Max R. Nicolai,* for appellants.

*Charles O. Carroll* and *V. D. Bradeson,* for respondents King County *et al.*

*John W. Sweet* and *Sweet, Wolf & Merrick,* for respondent McCullough.

FOSTER, J.—Appellants, relators below, were deputies of former King county sheriff Harlan S. Callahan, and appeal from the judgment dismissing their application for a writ of mandate to compel the present sheriff of King county, re-

[1] Reported in 312 P. (2d) 637.

spondent Tim McCullough, to appoint them as his deputies.[2] Although both alleged appointment by respondent McCullough, no such proof was offered, and the court found they had been appointed deputy sheriffs by former Sheriff Callahan, but not by respondent McCullough. Such findings are accepted as verities because no exception was taken to them.

The decisive issue and the only one requiring discussion is: Does the veterans' preference act[3] repeal or modify the statute authorizing the sheriff to appoint deputies who shall serve at his pleasure?[4] The able and experienced trial judge correctly held that it did not.

Both deputies of the former sheriff, who are honorably discharged veterans, rely entirely on *State ex rel. Ford v. King County*, 47 Wn. (2d) 911, 290 P. (2d) 465. That case dealt only with county employees working in a group affording fire and security protection at a county-owned air-

---

[2]The term of a deputy sheriff expires with the term of the sheriff who appointed him. *Abt v. Wilcox*, 264 Mich. 183, 249 N. W. 483; 1 Anderson on Sheriffs 76, § 85; *State ex rel. Rusch v. Board of County Com'rs of Yellowstone County*, 121 Mont. 162, 191 P. (2d) 670; *Ackley v. Norcross*, 122 N. J. L. 569, 6 A. (2d) 721; *National Cash Register Co. v. Berg*, 99 Pa. Super. Ct. 34; *Greenwood v. State*, 17 Ark. 332; *Trinkle v. State*, 59 Tex. Crim. App. 257, 127 S. W. 1060.

[3]"Section 73.16.010 of the Revised Code of Washington derived from section 1 of chapter 84 of the Laws of 1895 as last amended by section 1 of chapter 141 of the Laws of 1943 is hereby amended to read as follows:

"In every public department, and upon all public works of the state, and of any county thereof, honorably discharged soldiers, sailors, and marines who are veterans of any war of the United States, or of any military campaign for which a campaign ribbon shall have been awarded, and their widows, shall be preferred for appointment and employment. Age, loss of limb, or other physical impairment, which does not in fact incapacitate, shall not be deemed to disqualify them, provided they possess the capacity necessary to discharge the duties of the position involved." Laws of 1951, chapter 29, § 1, p. 59 [RCW 73.16.010].

[4]"Each sheriff may appoint as many deputies as he may think proper, for whose official acts he shall be responsible to the amount of their [his] bond, and may revoke such appointments at his pleasure; and persons may also be deputed by any sheriff in writing to do particular acts; and the sheriff shall be responsible on his official bond for the default or misconduct in office of his deputies." Rem. Rev. Stat., § 4160.

Rem. Rev. Stat., § 4160 is not found in the Revised Code of Washington, although the compilers refer to the law in 36.28.020 and 36.16.070.

port, and not public officers holding office created by statute and whose duties are defined by law.

The duties of the sheriff are prescribed by Laws of 1891, chapter 45, § 1, p. 83 [Rem. Rev. Stat., § 4157, RCW 36.28-.010], set out in the margin.[5] Rem. Rev. Stat., § 4160,[4] authorizes the sheriff to appoint deputies and revoke such appointments at will. By law, his deputies likewise possess the same power and may perform the same duties. Rem. Rev. Stat., § 4167[6] [cf. RCW 36.28.020, paragraph 1].

 The concluding sentence in Rem. Rev. Stat., § 4157 [cf. RCW 36.28.010], relieves the county of liability for the sheriff's acts, and this court held in *Carter v. King County*, 120 Wash. 536, 208 Pac. 5, that a deputy sheriff was not a servant of the county. A deputy sheriff is a public officer. *Gray v. DeBretton*, 192 La. 628, 188 So. 722; *Maxwell v. Andrew County*, 347 Mo. 156, 146 S. W. (2d) 621; *Scott v. Endicott*, 225 Mo. App. 426, 38 S. W. (2d) 67; *Towe v. Yancey County*, 224 N. C. 579, 31 S. E. (2d) 754; *Blake v. Allen*, 221 N. C. 445, 20 S. E. (2d) 552; *Gowens v. Alamance County*, 216 N. C. 107, 3 S. E. (2d) 339; *Borders v. Cline*, 212 N. C. 472, 193 S. E. 826; *Willis v. Aiken County*, 203 S. C. 96, 26 S. E. (2d) 313; *Murray v. State*, 125 Tex. Crim. App. 252, 67 S. W. (2d) 274; *Gross v. Gates*, 109 Vt. 156, 194 Atl. 465. In *Blackburn*

---

[5]"The sheriff is the chief executive officer and conservator of the peace of the county. In the execution of his office it is his duty— 1. To arrest and commit to prison all persons who break the peace or attempt to break it, and all persons guilty of public offenses. 2. To defend his county against those who by riot or otherwise endanger the public peace or safety. 3. To execute the process and orders of the courts of justice or judicial officers, when delivered to him for that purpose, according to the provisions of this code or other statutes. 4. To execute all warrants delivered to him for that purpose by other public officers, according to the provisions of particular statutes. 5. To attend the sessions of the courts of record held within his county, and to obey their lawful orders or directions. The county is not responsible for the acts of the sheriff."

[6]"Every deputy sheriff shall possess all the power, and may perform any of the duties, prescribed by law to be performed by the sheriff or by his deputies; shall serve or execute, according to law, all process, writs, precepts, and orders, issued or made by lawful authority, and to him directed, and he shall attend upon all courts of record at every session."

*v. Brorein,* 70 So. (2d) 293 (Fla. 1954), the reasons therefor were traced in their historical perspective.

There is, then, a special statute defining the duties of the sheriff and providing that his deputies shall have the same power and perform the same duties. The legislature specifically endowed the sheriff with the power to remove his deputies at will, for it made both the sheriff and the surety on his bond liable for their acts.[7] Appellants do not call attention to a single case in which a veterans' preference act has been held to modify or amend a special statute authorizing the sheriff to remove his deputy.

The deputies of the former sheriff who bring this action cannot tie the hands of succeeding sheriffs. If the law requires that officer to assume both the political and financial responsibility for the acts of his deputies, the law-making power acted both justly and wisely in endowing him with the power of appointment and removal. No limitation on that power will be imputed to the legislative branch of the government unless apt terms are employed manifesting such an intention, and surely such an intention cannot be imputed without a corresponding limitation of the sheriff's liability for the acts of his deputies. The supreme court of Florida was recently confronted with a very similar situation. The timely comment of that court in *Blackburn v. Brorein, supra,* is set out in the margin.[8]

This is consonant with the history of the office of sheriff which was interestingly traced by the supreme court of Florida recently (1954) in *Blackburn v. Brorein, supra.* The

---

[7] Rem. Rev. Stat., § 4160. *Biehn v. Bannick,* 166 Wash. 465, 7 P. (2d) 567; *Coles v. McNamara,* 131 Wash. 377, 230 Pac. 430; *Young v. Long,* 124 Wash. 460, 214 Pac. 821; *Kusah v. McCorkle,* 100 Wash. 318, 170 Pac. 1023.

[8] "In this case we have a striking example of what could be the result of forcing sheriffs to take deputies not of their own choosing. The deputy sheriffs who are parties to this cause were deputies under a former sheriff. The present sheriff was elected as a result of a heated and vigorous campaign in which he pledged to the people of Hillsborough County a 'change in policy.' How could the sheriff keep his promise to the people if he must accept the same deputies selected by a former sheriff."

leading text states that to be the consensus of judicial opinion.[9] 1 Anderson on Sheriffs 76, § 85.

Similar conclusions were reached by the supreme court of Michigan in *Abt v. Wilcox*, 264 Mich. 183, 249 N. W. 483, and by the supreme court of New Jersey in *Ackley v. Norcross*, 122 N. J. L. 569, 6 A. (2d) 721, in both of which honorably discharged veterans claimed the office of deputy sheriff under veterans' preference statutes. The opinion of the supreme court of Michigan is particularly important because the words of that statute are identical with the Washington veterans' preference statute "in any public department."[10] In *Ackley v. Norcross, supra,* it was pointed out that the New Jersey veterans' preference statutes were general in

[9] "As a general proposition, the power of appointment carries with it the power of removal so that it follows a deputy sheriff holds office only during the pleasure of the sheriff. Where a statute conferred upon a sheriff the power to appoint deputies, and fixed no definite term of office for them but provided that the tenure of the deputy should be at the pleasure of the sheriff, it is tantamount to a provision that both the appointment and the tenure are discretionary with the sheriff. Where such authority is given to the sheriff to appoint and where the tenure in office is not fixed by law, the sheriff may suspend or remove a deputy without notice to, charges against, or hearing. Where the power of approval of an appointment of a deputy rests in a board of county commissioners and also the right to determine the number of deputies necessary, such board may reduce the number of deputies, but the sheriff has the exclusive right to select the deputies which are to be retained. Of course, it goes without saying, unless otherwise provided by statute, that on the death of the sheriff the deputy sheriff's term ordinarily ceases. Or when the term of sheriff who appointed the deputy sheriff expires the deputy's tenure ends."

[10] "Section 1325 authorizes him to appoint one or more deputies 'for whose official acts he shall be in all respects responsible.' . . .

"If we concede, as urged by plaintiff's counsel, that the office of sheriff is a 'public department' of the county (*Ellis v. Common Council of Grand Rapids*, 123 Mich. 567), and that a deputy sheriff could not be removed or suspended without cause by the sheriff during his term of office, it does not follow that the appointment does not terminate on the expiration of the term to which the sheriff has been elected. . . .

" 'Bishop's authority to hold the office of sheriff expired at midnight of December 31, 1890, by constitutional limitation, and all his deputies and the undersheriff went out of office with him.' . . .

"The bond to be given by the newly-elected sheriff could not be held to protect against the default of a deputy whom he had not appointed." *Abt v. Wilcox*, 264 Mich. 183, 249 N. W. 483.

character and the sheriff's tenure statute was special in nature and any conflict would be resolved in favor of the special statute. The same is true in Washington. That portion of the opinion of the New Jersey court in this respect is set out in the margin.[11]

The judgment appealed from is affirmed.

HILL, C. J., SCHWELLENBACH, DONWORTH, and ROSELLINI, JJ., concur.

[11]"Moreover, the statutes relating to tenure, *supra*, upon which relator relies, are general, while those dealing with the office of undersheriff are special and specifically cover the subject. The rule is that where there is any conflict between a general and specific statute covering a subject in a more minute and definite way the latter will prevail over the former and will be considered an exception to the general statute." *Ackley v. Norcross*, 122 N. J. L. 569, 6 A. (2d) 721.

[1]Reported in 312 P. (2d) 647.