[No. 44531. En Banc. January 26, 1978.]

THE UNITED STATES OF AMERICA, *Appellant,* v. 1,216.83 ACRES OF LAND, ET AL, *Respondents.*

*Peter R. Taft, Assistant Attorney General, Dean C. Smith, United States Attorney, Robert M. Sweeney, Assistant United States Attorney, Edmund B. Clark* and *Robert L. Klarquist, Department of Justice,* for appellant.

*Ted Roy* (of *Hovis, Cockrill & Roy*), for respondents.

UTTER, J.—The United States Court of Appeals for the Ninth Circuit, pursuant to RCW 2.60, certified two questions to this court for decision. This certification arose out of that court's reversal of a decision of the United States District Court for the Eastern District of Washington. The district court held that the United States failed to comply with the requirements of 16 U.S.C. § 715k–5 which requires that the federal government receive the approval of "the Governor of the State or appropriate State agency" prior to acquiring, by eminent domain, land under the provisions of the Migratory Bird Conservation Act.

The opinion of the Ninth Circuit, set forth in its entirety below, summarizes the facts and issues which this case raises and concludes that appropriate procedures had been followed.

In August 1971, the United States brought suit to condemn certain lands for a migratory bird refuge. The owners of one of the targeted parcels answered the complaint, challenging the existence of the required state consent to the federal acquisition.

The Migratory Bird Conservation Act requires two separate elements of state consent before the United States may acquire property within a particular state. *Swan Lake Hunting Club v. United States,* 381 F.2d 238, 242–43 (5th Cir. 1967). First, the state must have consented by law to the acquisition of lands for bird refuges within the state. See 16 U.S.C. § 715f. Such general consent is present. See § 37.08.230 of the Revised Codes of Washington (RCW). The second element of consent is embodied in the requirement that the Governor or appropriate state agency approve the acquisition. Such was done by the Washington State Game Commission in 1964. RCW 77.12.320 specifically grants that power to the Commission.

On the strength of *Swan Lake, supra,* and on this Court's position in *United States v. Kennedy,* 278 F.2d 121 (9th Cir. 1960), the United States has the power of eminent domain.

Reversed.

Following this decision, the landowners petitioned for rehearing before the Ninth Circuit. Their petition contained the landowners' argument that the Court of Appeals "perfunctorily reversed" the district court "by the mere statement that RCW 77.12.320 'specifically grants that power (the power to consent to the condemnation of land by the Federal Government for migratory bird purposes) to the (Game) Commission.'" The landowners further urged the district court had carefully considered that statute and concluded it was inapplicable.

In response to the respondent landowners' petition, the Ninth Circuit has certified the following questions of state law to this court for decision:

(1) On February 10, 1964, was the Washington State Game Commission authorized by law (including, if applicable, Revised Code of Washington §§ 77.12.320 and 43.06.010(4)) to approve on behalf of the State specific land acquisitions by the United States pursuant to 16 U.S.C. § 715k-5 (Section 3 of Act of October 4, 1961, 75 Stat. 813, as amended, 81 Stat. 612 (1967))?

(2) On December 1, 1961, was the Governor authorized to delegate authority to approve of such federal land acquisitions to the Washington State Game Commission?

We answer both questions in the affirmative.

# I

The argument of the United States on question (1) is a direct and simple one, based on the statutory language of RCW 77.12.320.[1] The federal government asserts that the

---

[1]That statute provides, in pertinent part:

"The commission may enter into agreements with persons, municipal subdivisions of this state, the United States, or any of its agencies or instrumentalities regarding all matters concerning propagation, protection and conservation of wild animals, wild birds and game fish and concerning hunting or fishing therefor." RCW 77.12.320.

broad mandate of that statute establishes the game com-
mission as the "appropriate State agency" under 16 U.S.C.
§ 715k–5 because acquisition of land for a national wildlife
refuge is clearly within the terms, "*all matters* concerning
propagation, protection and conservation of wild animals,
wild birds and game fish . . ." (Italics ours.) RCW 77.12-
.320.

Respondent landowners make three contentions in
attempting to avoid the apparent scope of the statutory
language. They argue that (1) the chronology of the federal
and state statutes at issue negative the conclusion that
RCW 77.12.320 is authorization for the game commission to
grant specific consent; (2) RCW 43.06.010 either repealed
by implication RCW 77.12.320 or demonstrated that 77.12-
.320 was never meant to carry the broad authority that its
language suggests; and (3) the game commission is a *legis-
lative* agency, while 16 U.S.C. § 715k–5 requires approval of
the Governor or an *executive* agency.

 We fail to find any significance to attach to the
chronology of statutory enactments here. RCW 77.12.320
was enacted in Laws of 1947, ch. 275, § 37, and readopted
verbatim in 1955 (ch. 36). The relevant portion of that
statute has remained unchanged since that date. The perti-
nent federal statute, 16 U.S.C. § 715k–5, was not in force
until 1961. However, the fact that the state act predated
the federal act does not preclude the state act from carry-
ing, in its broad provisions, the general authority to do the
specific act of consent required by the federal statute. The
federal act does not require a special designation of the
appropriate agency to act in matters involving federal land
acquisition.

Further, the state statute has no legislative history or
prior construction by this court which suggests that there
are any limitations upon its scope. The only case cited to us
which considers the authority of state game officials is
*Tacoma v. Taxpayers,* 49 Wn.2d 781, 307 P.2d 567 (1957).
That case has no relevance to the issues here and merely

held that the directors of the game department did not represent the State in its sovereign capacity as owner of lands which the City of Tacoma sought to condemn. No particular significance can be attached to the chronology or history of these enactments.

■■ The landowners' allegation of implied repeal of RCW 77.12.320 is based upon RCW 43.06.010, a general statute enumerating the powers and duties of the Governor. Respondents rely upon subsection (4), which provides,

[The governor] is the sole official organ of communication between the government of this state and the government of any other state or territory, or of the United States;

This statute was passed originally in 1890. The "reenactment" upon which respondents rely for the repeal of 77.12-.320 is merely the 1965 adoption of Title 43 as a complete unit in codified form following minor changes in form of portions of that title. Those responsible for the reenactment specifically denied any attempt to change or affect the substance of the title's provisions. See explanatory note following the text of chapter 8, Laws of 1965. The 1965 legislature had no specific intent to affect the authority of the game commission with this reenactment. In any event, the elements needed to find a repeal by implication are not present. *Jenkins v. State,* 85 Wn.2d 883, 540 P.2d 1363 (1975). Even if RCW 43.06.010 could be viewed as a later enacted general statute by virtue of its reenactment in 1965, RCW 77.12.320, as a more specialized statute, would be construed as an exception to, or qualification of, the general statute. Where a special statute is passed before the general statute, the special statute will be construed as remaining an exception to its terms, unless it is repealed by express words or by necessary implication. *Wark v. Washington National Guard,* 87 Wn.2d 864, 557 P.2d 844 (1976). We find no express language of repeal in RCW 43.06.010.

What we have said about repeal also disposes of respondents' argument that the existence of RCW 43.06.010(4)

proves the limited nature of the powers conferred by RCW 77.12.320. We cannot interpret 43.06.010(4) as imposing an absolute ban upon contacts between state officials other than the Governor and units of other state and federal governments. This construction which respondents urge would result in significant and irreconcilable conflict between that statute and numerous other state enactments.[2]

We also cannot agree with the contention that the game commission is not capable of giving consent because it is a *legislative,* as opposed to executive, agency. The problem with this argument is twofold: (1) respondents cannot show that the federal statute distinguishes in the manner urged, and the case cited for this proposition does not support this distinction, and (2) characterization of the game commission as a legislative agency is doubtful. Respondents base their distinction upon language[3] found in *Swan Lake Hunting Club v. United States,* 381 F.2d 238 (5th Cir. 1967). The court therein was merely making the point that section 715k-5 does not contemplate formal action by the state legislature upon each federal acquisition. The language upon which respondents seize, taken in context, would not appear to support the distinction urged by the landowners here and no such distinction is applicable. Even if that distinction were viable, however, respondents have not cited any useful authority which in any way suggests that the game commission is properly classified as "legislative." Given the duties specified for the commission in RCW 77.12, and given the Governor's broad powers over

---

[2] As the brief for the United States points out, the statutes authorizing contact between Washington's state officials and officials of governmental units outside this state are too numerous to list.

[3] "The congressional history of the 1961 proviso suggests that it does not contemplate action by the state legislatures (as did the original Act) but approval by either the governor or a state executive agency of acquisition of each specific tract." *Swan Lake Hunting Club v. United States,* 381 F.2d 238, 243 (5th Cir. 1967).

membership, tenure, and salary of the commission, *see* RCW 77.04.030, .050, and .060, we would not be prepared to find that the game commission is a purely legislative agency.

■ The language of RCW 77.12.320 is itself the determinative factor in answering the first certified question, and the game commission has the power thereunder to grant the state's approval to federal land acquisitions as contemplated by 16 U.S.C. § 715k–5.

## II

■ The Governor was authorized to delegate authority of the federal land acquisition to the Washington State Game Commission. Unlike the authority granted the game commission in RCW 77.12.320 to act, the Governor has no specific state constitutional or statutory authority to act pursuant to 16 U.S.C. § 715k–5. Such specific authority is not required, however, and decision–making authority may be implied from the Governor's position as head of the executive branch of government. Const. art. 3, §§ 2, 5. RCW 43.06.010(1). State officers are not required personally to carry out all duties assigned to their offices. *State v. Yelle,* 4 Wn.2d 327, 103 P.2d 372 (1940). In view of the extensive authority the Governor has already been given by statute over the game department and its personnel, it is within the spirit of the *Yelle* case to find the Governor has the authority to specify the commission as the responsible agency to carry out the state's decision–making responsibility under 16 U.S.C. § 715k–5.

WRIGHT, C.J., ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, and HICKS, JJ., and RYAN, J. Pro Tem., concur.