[No. 7045-0-III. Division Three. September 18, 1986.]

CHELAN COUNTY DEPUTY SHERIFFS' ASSOCIATION, ET AL, *Respondents*, v. THE COUNTY OF CHELAN, ET AL, *Appellants.*

813

814

*Gary A. Riesen, Prosecuting Attorney,* and *Ernest R. Whitmore, Jr., Special Deputy,* for appellants.

*Craig A. Nelson,* for respondents.

McINTURFF, J.—This case raises the fundamental issue of whether the Washington Minimum Wage Act (MWA) applies to sheriffs' deputies. The Chelan County Deputy Sheriffs' Association, comprised of approximately 40 Chelan County deputy sheriffs, brought this action against Chelan County seeking compensation for time spent "on call". Following a bench trial concluding that the deputies were entitled to overtime compensation for on–call duty, Chelan County appealed, and the Association cross–appealed.

The basic facts are undisputed. Chelan County deputies are paid a monthly salary and historically receive no extra pay for on–call time. In 1976, however, certain overtime allowances were made for deputies appearing in court while off duty. Since 1979, Chelan County and the Association have had a collective bargaining agreement. While this agreement does not designate "on–call" time as compensable, on–call employees are paid overtime wages once called to duty.

Normally, deputies are scheduled for an 8–hour workday, 40 hours per week. During this time deputies actively patrol the "beat area" or perform other assigned duties. While on lunch breaks, deputies may not leave the beat area to which they have been assigned and must remain in uniform, armed at all times, to respond to any and all calls. When the deputies are not serving their 8–hour shifts, they may be subject to "on–call" duty, depending upon three situations: (1) When the County demands increased law

enforcement protection, *i.e.,* holiday weekends, including the Apple Blossom Festival, Memorial Day, Independence Day and Labor Day. (2) When there is a void in law enforcement coverage. The sheriff's office operates two shifts per day, discharging deputies at various times between 3, 4 and 5 a.m. Since the next shift commences at 7 a.m., there are hours before the 7 o'clock shift when officers may be on call. Either the deputy who has just gone off duty or the deputy about to come on duty will be called to incidents arising during these periods. (3) Deputies in the detective division are on call at any time during a 24–hour period for a 7–day week once every month.

On–call duty restricts deputies in their conduct and activities. They may not leave the immediate vicinity of Chelan County nor may they seek outside employment or involve themselves in other activities which may interfere with their ability to immediately respond to a call from their superiors. Deputies may not consume any alcoholic beverages while on call, nor engage in a large variety of activities which could conflict with their official duties, *i.e.,* camping, attending movies or sporting events.

Following trial November 2, 1984, the court entered its findings of fact and conclusions of law, holding: (1) plaintiffs were employees for purposes of the MWA and were not excluded "appointees"; (2) on–call time, including lunch breaks, was "work"; (3) sleeping and eating time were not excluded if the deputy was on call during that time; and (4) the collective bargaining agreement did not act as a bar to this action.

## CHELAN COUNTY'S APPEAL

The first issue concerns the scope of the MWA coverage regarding sheriffs' deputies. The County claims the deputies are excluded from coverage under the MWA as appointive officers, RCW 49.46.010(5)(l), or because they serve substantial portions of their time subject to call, RCW 49.46.010(5)(j). The deputies having been hired and

permitted to work are "employees", entitled to the benefits of the MWA, unless they fall within any one of the specific categories expressly excluded from the definition of employee. RCW 49.46.010(3), (5). Whether an exclusion under the act applies in a particular case, however, should be reviewed pursuant to the "clearly erroneous" standard. *Goff v. Airway Heights*, 46 Wn. App. 163,[†] 725 P.2d 997 (1986); *see Worthington v. Icicle Seafoods, Inc.*, 749 F.2d 1409 (9th Cir. 1984) (construing Fair Labor Standards Act (FLSA)); *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 89 L. Ed. 1095, 65 S. Ct. 807, 157 A.L.R. 876 (1944); *cf. Peterson v. Hagan*, 56 Wn.2d 48, 56, 351 P.2d 127 (1960) (Washington's MWA has purposes similar to FLSA and is based upon it).

### THE "APPOINTED OFFICER" EXCLUSION

■ RCW 49.46.010(5)(l) excludes from coverage any individual "who holds a public elective or appointive office of . . . any county". Whether a deputy sheriff is indeed an appointive officer turns upon the interchange between common law and statutory enactments. At common law, a deputy sheriff held an appointed position, as distinguished from employment. *State ex rel. Day v. King Cy.*, 50 Wn.2d 427, 429, 312 P.2d 637 (1957); *Carter v. King Cy.*, 120 Wash. 536, 208 P. 5 (1922). In the absence of specific language to the contrary, a deputy sheriff was deemed an official, not an employee, because: (1) all deputy officers had the same power and authority as the sheriff, and all official acts by the deputy were indeed the acts of the sheriff, *Pfister v. Niobrara Cy.*, 557 P.2d 735, 740 (Wyo. 1976); *Winnebago Cy. v. Industrial Comm'n*, 39 Ill. 2d 260, 234 N.E.2d 781 (1968); *Hensley v. Holder*, 228 Ark. 401, 307 S.W.2d

†Reporter's Note: This opinion, as filed, cited an opinion in *Goff v. Airway Heights* that was filed September 18, 1986, and withdrawn December 9, 1986, *without having been published in the official reports.* The December 9, 1986, order amending this opinion changed the citation to a second *Goff* opinion filed December 9, 1986.

794 (1957); *State ex rel. Geyer v. Griffin,* 80 Ohio App. 447, 76 N.E.2d 294, 298 (1947); *Bigham v. State,* 141 Tex. Crim. 332, 148 S.W.2d 835 (1941); (2) the position of deputy sheriff was prescribed by law, requiring the deputy to take an official oath, and perhaps to provide an official bond, *State ex rel. Day,* at 430–31; *In re Bowden,* 123 Me. 359, 123 A. 166 (1924); *Toomey v. New York State Legislature,* 2 N.Y.2d 446, 141 N.E.2d 584, 161 N.Y.S.2d 81 (1957) (legislator is officer because position was created by the legislature); *cf. State ex rel. Running v. Jacobson,* 140 Mont. 221, 370 P.2d 483 (1962) (clerk to school board was not an officer because position was not created by the legislature); and (3) the sheriff was vested with absolute discretion to appoint deputies and could hire and fire without cause, *State ex rel. Day,* at 430–31.

■ Here, two of the three criteria are satisfied. The sheriff is authorized to employ deputies and other necessary employees with the consent of the board of county commissioners. RCW 36.16.070. The deputy sheriff may perform any act which his principal is authorized to perform. RCW 36.28.010, .020. Furthermore, the sheriff shall be responsible on his official bond for any deputy sheriff's default or misconduct. RCW 36.28.020. While it is apparent deputy sheriffs must take an oath, the board of county commissioners decides whether the deputies will be required to post a bond. RCW 36.16.060, .070. Based upon these two criteria, the Attorney General's office concluded sheriffs' deputies hold appointive offices and are therefore excluded from the MWA. AGO 12 (1977).

The third criterion, however, whether the sheriff is vested with absolute discretion to appoint the deputies, is not satisfied. In *State ex rel. Day v. King Cy., supra,* the court considered whether a deputy sheriff was a servant of the county or a public officer. Placing significant reliance upon the fact the sheriff appointed deputies and could revoke such appointments at will, the court concluded deputy sheriffs were public officers. *State ex rel. Day,* at 431.

One year after that opinion, however, Washington voters

passed Initiative 23 in 1958, enacting a civil service system for all deputies and severely restricting the sheriff's power to employ and discharge personnel. Under the act, deputies were made members of the "classified civil service". RCW 41.14.070. As a result, all deputy appointments are to be made solely on merit, ascertained by open, competitive examination and impartial investigation. RCW 41.14.080. Contrary to common law, the sheriff can no longer discharge at will since those permanently appointed into the classified civil service can be removed or discharged only for cause. Furthermore, whenever a vacancy occurs, the sheriff cannot appoint any person, but must ask the civil service commission for the names of eligible appointees. RCW 41.14.130.

We conclude that given the significant change mandated by this statutory enactment, a deputy should not be considered an appointed officer because a sheriff can no longer "appoint" a deputy sheriff as that term was understood at common law. Accordingly, we hold the court properly ruled that this exemption did not apply here.

## The "On–Call" Exclusion

■ The County also alleges the deputies are exempt because they spend a "substantial portion" of their work time "subject to call, and not engaged in the performance of active duties". RCW 49.46.010(5)(j). In *Goff v. Airway Heights, supra* at 167, this court examined the applicability of this exclusion to an Airway Heights police officer and noted:[††]

Application of RCW 49.46.010(5)(j) requires the determination of two factual issues: (1) whether Mr. Goff's time constituted active duty or subject–to–call time (by active duty we mean all scheduled full–time shift work and subject–to–call time where the employee's time is

---

[††]Reporter's Note: As originally filed, this opinion quoted from an opinion in *Goff v. Airway Heights* that was withdrawn prior to being officially reported. The December 9, 1986, order amending this opinion substituted a quotation from a second *Goff* opinion filed December 9, 1986.

spent predominantly for the benefit of the employer; by subject to call we mean time spent predominantly for the employee's benefit—where the employee is merely waiting to be called); and (2) if he served time subject to call, whether that time constituted a "substantial portion" of his overall work time.

Factors considered in determining whether on–call time is compensable active duty include: the employment agreement; whether the employees are required to remain on the premises during waiting time; whether the time spent is predominantly for the employer's or employee's benefit; and the degree to which the employee is permitted to engage in his own activities. *Goff*, at 167–68.

Here, we have several different types of employment and on–call duty, depending upon the shifts assigned and the positions held. Day shift deputies spend 9 hours active duty with 1 hour set aside for lunch. Although before this case the deputies were not compensated for lunchtime, Chelan County stipulates that lunchtime is active duty and must be compensated. Brief of Appellant, at 12; *see also Weeks v. Chief of Wash. State Patrol,* 96 Wn.2d 893, 639 P.2d 732 (1982). Deputies serving the day shift may also be subject to call on weekends during which extra law enforcement is necessary, *i.e.,* Apple Blossom Parades or Memorial Day weekend. We do not find these occasional duties constitute a "substantial" portion of the deputies' actual work time, necessitating exclusion from the MWA.

Night shift deputies perform active duty for 8 hours, with no lunch breaks. For the remaining 3 to 4 hours, the deputies remain on call, responding to all situations whether emergency or not. The unchallenged findings of the trial court indicate this on–call duty so interferes with the deputies' off–duty time that it constitutes compensable time. Hence, while the night deputies perform substantial portions of on–call duty, such is "active duty". Consequently, night deputies also are not excluded by RCW 49.46.010(5)(j).

Detective deputies normally work traditional office hours,

a 40–hour week, with weekends off. But each detective is required to serve on call for one 7–day week out of four. That is, the detective is on call for 168 consecutive hours, including a 40–hour workweek, once every 4 weeks. Should the detective be called to work he is then allowed overtime compensation. The unchallenged findings show that on–call duty restricts the deputies' personal life to such an extent that it constitutes compensable work time. Since these findings are verities on appeal, we conclude this on–call time is also "active duty", and find the exclusion inapplicable here.

Next, Chelan County alleges the court erred in including sleep and eating time as compensable work time for those on–call deputies. The County poses this issue in the context of those deputies subject to call during periods greater than 24 hours, *i.e.*, when a detective is on call for a week at a time, and when deputies are on call for holiday weekends, usually 3 days.

Sleep time may be considered work time under certain circumstances. *Armour & Co. v. Wantock,* 323 U.S. 126, 89 L. Ed. 118, 65 S. Ct. 165 (1944); *Skidmore v. Swift & Co.,* 323 U.S. 134, 89 L. Ed. 124, 65 S. Ct. 161 (1944).

> Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.

*Armour,* at 133. The *Skidmore* Court elaborated on the approach the trial court should take in resolving this factual question:

> [S]crutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances.

*Skidmore,* at 137.

Here, it is unclear how frequently the deputies were

interrupted. To determine whether sleeping time is compensable we examine whether the time spent is "predominantly for the employer's benefit". *Armour,* at 133. The unchallenged finding of fact documents that any restrictions imposed upon the deputies during their on–call times are for the benefit of Chelan County. Accordingly, we find, at least in this circumstance, that the deputies should be compensated for their on–call duty.

### THE DEPUTIES' APPEAL

In their cross appeal, the deputies contend the FLSA applies to the Chelan County deputy sheriffs. In particular, the deputies contend the federal standard for overtime work of law enforcement officials should control here. 29 U.S.C. 207(k) mandates that overtime compensation shall be paid for those hours which exceed 216 hours in a 28–day period. The Washington rule, however, is different because it entitles the worker to overtime compensation for work hours in excess of 240 hours in a 28–day period. RCW 49.46.130(2) reads:

> No public agency shall be deemed to have violated subsection (1) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities . . . if: (a) *In a work period of twenty–eight consecutive days the employee receives for tours of duty which in the aggregate exceed two hundred and forty hours*; or (b) in the case of such an employee to whom a work period of at least seven but less than twenty–eight consecutive days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as two hundred forty hours bears to twenty–eight days;

(Italics ours.) This section does not apply to those working on farms, or in the packing, canning, harvesting and freezing industry, RCW 49.46.130 (see proviso), nor to any industry in which the FLSA provides for an overtime payment. "Industry" is "a trade, business, industry, or other

activity, or branch, or group thereof, in which individuals are gainfully employed". RCW 49.46.130.

Generally, the MWA has been viewed as supplementary to the federal act. Any standards established by any federal, state or local law "which are more favorable to employees than the minimum standards applicable under this chapter, . . . shall be in full force and effect and may be enforced as provided by law." RCW 49.46.120. It would seem by this section that the proviso above regarding law enforcement officials would be merely a benchmark and not the actual standard by which overtime compensation for deputy sheriffs would be determined. But where a statute expresses first a general intent and afterwards an inconsistent particular intent, such particular intent will be taken as an exception from the general intent and both will stand. *United States v. 1,216.83 Acres of Land,* 89 Wn.2d 550, 555, 574 P.2d 375 (1978); *In re North River Logging Co.,* 15 Wn.2d 204, 207, 130 P.2d 64 (1942). Furthermore, the latest of two conflicting sections of a statute in order of positional arrangement will prevail. *Schneider v. Forcier,* 67 Wn.2d 161, 164, 406 P.2d 935 (1965).

Here, the general intent is that the MWA merely supplement, not supplant, the FLSA. There is particular intent expressed, however, that with respect to law enforcement officials a different standard shall apply. Furthermore, RCW 49.46.120, which expresses the general intent of the statute, was passed with the original legislation in 1959. RCW 49.46.130 was added to the statute in 1975 and amended in 1977. Laws of 1975, 1st Ex. Sess., ch. 289, § 3, p. 1242; Laws of 1977, 1st Ex. Sess., ch. 4, § 1, p. 176. Consequently, we hold the exception in RCW 49.46.130(2) controls because it is more particular in expressed intent and is the most recent expression of our Legislature's mandate on this subject. We find no error.

Next, the deputies allege the court erred in applying the equitable doctrine of laches to bar their claims for overtime wages. Laches is an implied waiver arising from knowledge of existing conditions and acquiescence in them.

The elements of the defense are: (1) knowledge or reasonable opportunity to discover on the part of a potential plaintiff that he has a cause of action against a defendant; (2) an unreasonable delay by the plaintiff in commencing that action; and (3) the defendant is damaged from the unreasonable delay. *Buell v. Bremerton*, 80 Wn.2d 518, 522, 495 P.2d 1358 (1972); *see also LaVergne v. Boysen*, 82 Wn.2d 718, 722, 513 P.2d 547 (1973).

Here, the unchallenged findings of fact indicate: the deputy sheriffs knew or had a reasonable opportunity to discover that they had a cause of action against the defendant when they requested but were denied on–call compensation during the collective bargaining commencing in 1978 and 1979. The County and the deputies stipulated to the amount of compensation to be paid throughout the periods of the respective employment. Payment in full was made by monthly paychecks, which were accepted by the deputies. Moreover, the deputies knew of the financial operation of Chelan County, which was governed by law prescribing annual balanced budgets, but failed or neglected to assert their claim for compensation until May 29, 1980. This was unreasonably late, causing damage to the County because the County budget committing revenues through calendar year 1980 had been adopted and the budgets for 1977 through 1979 had been closed. Any allowance of the deputies' claims at this late date would cause great prejudice and hardship to the County. Given these verities on appeal, we conclude the court properly denied the deputies' claims for back wages.[1]

---

[1]The deputies also contend the court erred in denying overtime for all work performed in excess of 40 hours per week. They allege the collective bargaining agreement, which provides for a 40–hour workweek, estops the county from applying the 240–hour/28–day standard. We disagree. RCW 49.46.130(2) affords the County no opportunity to elect a formula other than that established in RCW 49.46.130(2). That section says, "No public agency shall be deemed to have violated subsection (1)". We find the collective bargaining agreement is inapplicable here because the parties did not agree to the overtime compensation requested here. Furthermore, the statute clearly establishes the procedure by which the parties may determine what overtime compensation is due. Consequently, the

The judgment of the Superior Court is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Review granted by Supreme Court December 2, 1986.

deputies may be compensated regular time for those hours worked in excess of 40 hours per week, but less than 240 hours in a 28 consecutive day period.