762 P.2d 820

**Fred HANSEN, Joanne Hansen, Daryl Sparks and Betty Tueller, Plaintiffs–Appellants,**

v.

**Randall WHITE and Bear Lake County, Defendants–Respondents.**

**No. 17139.**

Supreme Court of Idaho.

Aug. 31, 1988.

Rehearing Denied Oct. 20, 1988.

Morgan & George, Pocatello, for plaintiffs-appellants. Ronald S. George argued.

Ward, Maguire, Bybee & Kline, Pocatello, for defendants-respondents. David H. Maguire argued.

BISTLINE, Justice.

Pursuant to I.A.R. 12.1, the Ninth Circuit certified the following question to this Court:

> Under Idaho law, have the county commissioners authority to institute a merit system binding county officers, particularly the sheriff, under which such officers may not terminate deputies and other employees in their department except for cause?

We conclude that a sheriff's constitutional right to appoint deputies is not abridged where county commissioners institute a merit system prohibiting the dismissal of deputies without cause, so long as the merit system is reasonable under the circumstances.

## I. FACTS

The facts, as stated by the Ninth Circuit Court of Appeals, are as follows:

> In October, 1978, the Bear Lake County Commissioners adopted the Bear Lake County Personnel Handbook. This handbook established basic administrative procedures for the various county departments and policies on employee fringe benefits, compensation and classification. Of importance to this case, the handbook specifically provided for a twelve-month probationary period during which a new employee could be eliminated at any time if his performance did not meet the required standard of work. Once an employee completes the period, he is classified as a "permanent employee." The handbook is silent with respect to the grounds for termination of a permanent employee.

> Shortly after adoption of the handbook, Tueller was hired as a dispatcher by Sheriff Larry Hardin. At the time of her hiring, Tueller was told by Sheriff Hardin that pursuant to the handbook, once Tueller had served the probationary period she would become a permanent full-time employee who could only be discharged for cause. Aware of the provisions of the handbook, Tueller completed the twelve-month period at which time she considered herself a tenured employee. Later Sheriff Hardin transferred Tueller from dispatcher to office deputy at which time he sent a letter to the Commissioners informing them of the transfer and that Tueller was a tenured employee.

> Fred Hansen was also hired by Sheriff Hardin. Like Tueller, he was informed of the handbook and its provisions for a probationary period. Several days before Fred Hansen had completed the twelve-month period, Sheriff Hardin sent a letter to the Commissioners informing

them of Hansen's upcoming change to permanent full-time status.

Thereafter, Fred Hansen left his job with the department to become a police officer in Logan, Utah. While he was gone, Sheriff Hardin resigned, and Daryl Sparks, a permanent status deputy, was appointed by the Commissioners to serve the balance of Hardin's term as sheriff. After Sheriff Sparks took office, he offered Fred Hansen a position as a deputy sheriff and promised him that if he accepted he would only have to serve a six-month probationary period. The reasons for the shortened period were Hansen's prior job experience and performance and the fact that Hansen would be able to complete the time prior to the upcoming election. Fred Hansen accepted the position and completed the six-month period at which time Sheriff Sparks sent a letter to the Commissioners stating that, as Sheriff, Sparks was waiving the balance of the probation time and now considered Hansen 'a merit employee who cannot be separated except for cause and in accordance with departmental policy for merit employees.'

Joanne Hansen, Fred Hansen's wife, worked as a dispatcher for a period of time under Sheriff Hardin, but left her job when Fred went to work in Logan. After Fred returned to Bear Lake County as deputy, Joanne began working for the department as a dispatcher on a part-time basis and later full time. Upon becoming a full-time employee, Sheriff Sparks agreed that Joanne also need only serve a six-month probationary period. Upon completing the six months, Sheriff Sparks sent a letter to the Commissioners informing them that he was waiving the balance of the probation time and that he considered Joanne a merit employee who could not be separated except for cause.

In the 1982 Idaho state Republican primary, incumbent sheriff Sparks ran against Randall White and was defeated. Despite this defeat, Sparks ran as a write-in candidate in the general election in November. White won the election. Sparks finished out his term and then sought to revert to his former status as a tenured deputy.

During the election period, Fred Hansen, Joanne Hansen, and Betty Tueller had actively campaigned for Sparks. On the day Sheriff White took office, he delivered written termination notices to appellants. Of the remaining seven employees in the Sheriff's Department, White fired only one other.

After being fired, appellants, along with former Sheriff Sparks, filed a claim with the Bear Lake County Commissioners, charging that Sheriff White had no justification for terminating them and in fact had terminated them because of their support of Sparks. The Commissioners denied the claim without a hearing. However several months later, appellants were granted a hearing before the Commissioners at which time they presented their grievance. The Commissioners again refused to take any actions stating that they had no authority to overrule Sheriff White's decision to terminate an employee in his department.

Appellants and Daryl Sparks brought suit in federal district court alleging breach of contract under Idaho state law, the state tort of wrongful termination, and a claim under 42 U.S.C. § 1983 that they had been terminated in retaliation for exercising their First Amendment rights to support the campaign of Daryl Sparks. The complaint was later amended to include a § 1983 claim that appellants were terminated without due process of law because they had not been afforded a meaningful hearing prior to being fired.

Appellees moved to dismiss and/or for summary judgment on the federal claims. They also moved to dismiss the two pendent state claims. The district court granted summary judgment against Daryl Sparks on the ground that as an elected official defeated in the 1982 election, he had no claim to continued employment in the Sheriff's Department. The court denied the motions with respect to appellants; however, it did strike their request for punitive dam-

ages. Prior to trial, appellants abandoned their tort claim for wrongful discharge.

On the second day of trial, the district court changed its mind and announced from the bench that it was ruling that under Idaho law the Commissioners had no power to set up a merit system that would bind the Sheriff. The court stated that its ruling applied to both the state breach of contract claim as well as the federal due process claim. As an alternate basis for its ruling, the court noted that even if the commissioners could establish a merit system, the claims by Fred and Joanne Hansen would still fail since those two had not completed the twelve-month probationary period prior to being terminated and that 'the outgoing sheriff could not waive the requirement and thus require the incoming sheriff to accept deputies who had not met the requirement of a year of satisfactory service in order to get their security for appointment.' Pursuant to the court's decision, appellants proceeded to make their offer of proof on the breach of contract and due process claims. On appeal, we treat the court's decision as granting summary judgment for appellees on those causes of action.

The trial proceeded on the First Amendment claim, and the jury returned a verdict in favor of appellees. In accordance with that verdict, the district court entered judgment on August 27, 1985 in favor of appellees and awarded them costs of $3,000.00.

Ninth Circuit Court of Appeals Opinion Certifying Question to the Idaho Supreme Court, No. 85–4202, June 22, 1987.

This appeal presents a two-step inquiry. First, has the board of county commissioners been granted the authority by the Idaho legislature to establish a merit system binding the sheriff? Second, if so, does a merit system which prohibits the termination of employees, absent cause, violate the sheriff's art. 1, § 6 right to appoint deputies and clerical assistants?

## II. LEGISLATIVE AUTHORITY TO ESTABLISH A MERIT SYSTEM

Article 18, § 5 of the Idaho Constitution provides that the legislature shall establish a uniform system of county governments.[1] In response, the legislature has enacted Title 31 of the Idaho Code, entitled "Counties and County Law." Chapters 7 and 8 thereof pertain to the board of county commissioners, including their powers and duties. I.C. § 31–714 provides in part:

> The board of county commissioners may pass all ordinances and rules and make all regulations, not repugnant to law, necessary for carrying into effect or discharging the powers and duties conferred by the laws of the state of Idaho, and such as are necessary or proper to provide for the safety, promote the health and prosperity, improve the morals, peace and good order, comfort and convenience of the county and the inhabitants thereof.

Idaho Code § 31–601 states that every county is a body politic, and has the powers specified in Title 31 or in other statutes, and "such powers as are necessarily implied from those expressed." Thus, as the legislative arm of county government, the board of county commissioners has both expressed and implied power to promulgate ordinances, rules and regulations, which, in the judgment of the board, promote the general welfare of the county.

In *Benewah County Cattlemen's Association v. Board of County Commissioners*, 105 Idaho 209, 668 P.2d 85 (1983), we held that absent a legislative enactment clearly indicating that livestock must be free to roam the lands of Idaho uninhibited, counties may validly exercise their police power to prohibit free roaming livestock. In the instant case not only is there an absence of a legislative enactment *prohibiting* the adoption of a merit system, but, in fact, a legislative enactment *inviting* one.

---

1. Article 18, § 5 reads: **System of county government.**—The legislature shall establish, subject to the provisions of this article, a system of county governments which shall be uniform throughout the state; and by general laws shall provide for township or precinct organizations.

In establishing the Personnel System for *state* employees, the Idaho legislature has declared in I.C. § 67–5301, that a personnel system provides a means by which state employees can be examined and retained on the basis of merit, thereby promoting efficiency in government, which is required by the "general welfare" and "public good." [2]

The legislature, furthermore, has made the personnel system available not only to state employees, but also political subdivisions within Idaho. Idaho Code § 67–5310 provides in part:

> Subject to the approval of the [personnel] commission, agreements may be entered into with any political subdivision of the state of Idaho to furnish services and facilities of the commission and staff to such political subdivisions in the administration of their personnel on merit principles.

A county is a political subdivision of the state. *Henderson v. Twin Falls County,* 59 Idaho 97, 119, 80 P.2d 801, 811 (1938); *see also* I.C. § 31–601, *supra.*

Thus, the foregoing authorities make clear that (a) a merit system for public employees serves the public interest; [3] (b) the board of county commissioners is the legislative branch of county government, responsible for promoting the general welfare; [4] (c) the board of county commissioners have power both express and implied power to promote the general welfare of the county; [5] (d) counties may, as a political subdivision within a state, enter into agreements with the state personnel commission to provide a merit system for its employees. [6] Just as the legislature has declared that a merit system for state employees promotes the general welfare, the board of county commissioners has similarly determined that a merit system for county employees promotes the general welfare of the county. Rather than prohibiting the county commissioners from instituting a merit system by statute, the Idaho legislature has, in fact, invited counties to enter into agreements with the state personnel commission to provide a merit program for county employees.

■ Therefore, without regard to constitutional considerations, we conclude that the board of county commissioners has the statutory authority to create a reasonable county merit system, and such an act is a valid legislative exercise of its express power to promote the general welfare of the county.

## III. THE CONSTITUTIONAL RIGHT OF THE SHERIFF TO APPOINT DEPUTIES

Article 18, § 6 of the Idaho Constitution establishes that the sheriff is an elected county officer who is empowered by the county commissioners to appoint deputies and clerical assistants as the business of the sheriff's office may require. [7] We now

---

2. Idaho Code § 67–5301 reads:

**Establishment of personnel commission and declaration of policy.**—There is hereby established the Idaho personnel commission, in the department of administration, which is authorized and directed to administer a personnel system for classified Idaho employees. The commission shall not be subject to the administrative control of the director of the department of administration. The purpose of said personnel system is to provide a means whereby classified employees of the state of Idaho shall be examined, selected, retained and promoted on the basis of merit and their performance of duties, thus effecting economy and efficiency in the administration of state government. The legislature declares that, in its considered judgment, the public good and the general welfare of the citizens of this state require enactment of this measure, under the powers of the state.

3. Idaho Code § 67–5301, quoted *supra* at note 2.

4. Idaho Code § 31–714, quoted *supra.*

5. Idaho Code § 31–601, quoted *supra.*

6. Idaho Code § 67–5310, quoted *supra.*

7. Article 18, § 6 provides in full:

**County officers.**—The legislature by general and uniform laws shall, commencing with the general election in 1970, provide for the election biennially, in each of the several counties of the state, of county commissioners and a coroner and for the *election of a sheriff* and a county assessor and, a county treasurer, who is ex officio public administrator, every four (4) years in each of the several counties of the state. All taxes shall be collected by the officer or officers designated by law. The clerk of the district court shall be ex officio auditor and recorder. No other county offices shall be established, but the legislature by general and

focus on the central issue of this appeal, namely, whether the institution of a merit system prohibiting the termination of deputies without cause impermissibly infringes upon the sheriff's constitutional right to appoint deputies.

On several occasions the Court has interpreted art. 18, § 6. *E.g., Campbell v. Board of Commissioners*, 5 Idaho 53, 46 P. 1022 (1896) (question of appointment of deputies is submitted entirely to the discretion of the county commissioners and sheriff cannot appoint a deputy unless he is so empowered by commissioners); *Taylor v. Canyon County*, 6 Idaho 466, 56 P. 168 (1899) (before county commissioners are authorized to empower the sheriff to appoint a deputy, they must find that the business of the office requires the assistance of a deputy); *Dukes v. Board of County Commissioners*, 17 Idaho 736, 107 P. 491 (1910) (upon showing to proper tribunal that a deputy or clerical assistant is needed, county commissioners must authorize appointment); *Crooks v. Maynard*, 112 Idaho 312, 732 P.2d 281 (1987) (district judge, ·in exercise of supervisory power over clerical activities of district court clerk, may set guidelines for hiring deputy clerks that perform judicial functions, control assignment of persons hired by clerk, and refuse assignment of personnel considered unacceptable for judicial function). Nevertheless, none of our prior cases has discussed the interplay between the county commissioner's statutory right to adopt a merit system against the sheriff's constitutional right to appoint deputies.[8]

The sheriff contends that, as matter of common law, the right to appoint necessar-

ily includes the right to terminate. In support of this argument the sheriff cites *Gowey v. Siggelkow*, 85 Idaho 574, 382 P.2d 764 (1963). In *Gowey* the plaintiff sought judgment declaring him the rightful chairman of the board of the then-village of Garden City. We held that the board had the right to appoint the chairman, and incident to the power to appoint is the corresponding power to remove. As a result, we concluded that the plaintiff could be removed as chairman at the pleasure of the board without notice or hearing. 85 Idaho at 587, 382 P.2d at 773.

*Gowey* is clearly distinguishable from the present case. Fundamental to our decision in *Gowey* was the *absence* of a statute or regulation fixing the terms of office or grounds for dismissal. *Id.* See also 63 Am.Jur.2d, Public Officers and Employees, § 223 at 828 (non-civil service public employee serves at the will of superiors and can be discharged for any legitimate reason or for no reason at all). In the case a bar, by contrast, the board of county commissioners specifically enacted a merit system, which entitles county employees to become "permanent" employees, once a required "probationary" period had. been completed. Under the merit system, an employee during the "probationary" period can be terminated without cause. R. at 35. As stated in *Gowey*, 85 Idaho at 591, 382 P.2d at 776:

Indeed, even where the power of removal is not expressly conferred, the general rule is that a grant of the power to appoint is construed to carry with it, by necessary implication, a grant also of the unconditional power to remove, *if the*

uniform laws shall provide for such township, precinct and municipal officers as public convenience may require, and shall prescribe their duties, and fix their terms of office. The legislature shall provide for the strict accountability of county, township, precinct and municipal officers for all fees which may be collected by them, and for all public and municipal moneys which may be paid to them, or officially come into their possession. The county commissioners may employ counsel when necessary. The *sheriff,* county assessor, county treasurer, and ex officio tax collector, auditor and recorder and clerk of the district court *shall be empowered by the county commissioners* to appoint

such deputies and clerical assistants as the business of their office may require, said deputies and clerical assistants to receive such compensation as may be fixed by the county commissioners.

8. In *Holloway v. Palmer,* 105 Idaho 220, 668 P.2d 96 (1983), the issue was whether a sergeant in the Ada County Sheriff's Department had been dismissed for good cause pursuant to a merit system enacted by county ordinance. The constitutionality of such a merit system, however, was not raised by the parties nor addressed by the Court.

*term of office is not fixed by law and the right to remove is not in any other manner restricted.* (emphasis added) (quoting *State ex rel. Fisher v. City of Lincoln* [137 Neb. 97], 288 N.W. 499, 500 (Neb.1939)).

Thus, once a deputy attains "permanent" status under the merit system, the deputy is no longer an employee "at will." Consequently, the sheriff's implied power to terminate employees without cause, which arises from the common law, not the constitution, is superseded by the merit system.

The sheriff contends that because sheriffs are elected,[9] voters of the county often cast their ballots to elect not only a new sheriff, but also to obtain a different corps of deputies which often follow an inefficient or corrupt incumbent. However, under our constitution it is the sheriff who is elected, not the deputies. Also, it is contended that a civil service system which prohibits the termination of employees without cause actually promotes an efficient government:

> While security of tenure in office is an important object of the civil service system, and it has been said that civil service legislation was enacted for the security of the faithful employee by giving him permanence of employment, at least for the period prescribed by law, and to free such employee from the fear of political and personal prejudicial reprisal, civil service laws were intended as a protection for the public as well as for the individual employee. Stated otherwise, civil service was not established for the sole benefit of public employees. In fact, it has been said that the primary purpose of civil service is to enable state, county, and municipal governments to render more efficient services to the public by enabling them to obtain efficient public servants.

15 Am.Jur.2d, Civil Service, § 1 at 6 (footnotes omitted).

**9.** Article 18, § 6, Idaho Constitution, quoted *supra* at note 7.

**10.** An employee handbook may constitute an element of an employee contract. *Watson v.*

As a general rule, civil service programs have been held constitutional. 16 C.J.S. Constitutional Law at 190. Professor Reynolds writes in his treatise on local governments:

> Some local government employees may not be within civil-service provisions or have any other statutory or charter rights in their jobs. They can be dismissed without cause—meaning for any reason the local governing body, or other appointing authority, thinks adequate ... But, if by statute, character, or contract,[10] either an officer or an employee has property rights in his position, then he is entitled to procedural due process—meaning adequate notice and hearing. These due process requirements ordinarily apply to (1) *employees covered by civil-service laws,* (2) elected officials, (3) officers appointed for a fixed term, and (4) any officers or employees who are specified as holding their positions for "good behavior."

O. Reynolds, *Handbook of Local Government law,* § 91 Public Employees, 275–278 (1982) (emphasis added) (footnotes omitted). Similarly, Professor Antineau states:

> In the absence of statute or charter provision, county employees can be dismissed at the will of their superiors or the county governing body. The power of appointment includes the power of removal.... [however], [c]ivil service, teacher, and veterans tenure acts and the like now apply to many county employees and typically provide that dismissal can only be for 'cause' or 'good cause.' In the usual jurisdiction, grounds for removal and suspension of county officers and employees can be specified by the state legislature. Where not so indicated, the county governing body can reasonably establish the grounds that will justify removal or suspension.

4 C. Antieau, *Local Government Law,* County Law, § 34.10 (1987) (footnotes omitted). *See also,* C. Rhyne, *The Law of Lo-*

*Idaho Falls Consolidated Hospitals,* 111 Idaho 44, 720 P.2d 632 (1986); *Harkness v. City of Burley,* 110 Idaho 353, 715 P.2d 1283 (1986).

**914**

cal Government Operations, § 13.45 at 272–273 (1980) (civil service statutes and regulations generally permit the dismissal of employees without charges, notice or hearing during probationary period; after probationary period, civil service employees may be removed only for cause).

Precedent from other jurisdictions support the proposition that the merit system adopted by a board of county commissioners does not violate the sheriff's constitutional right to appoint deputies. At common law deputies served solely at the pleasure of the sheriff. 70 Am.Jur.2d, Sheriffs, Police and Constables, § 22 Deputy Sheriffs at 244; *Chelan County Deputy Sheriffs' Assn. v. County of Chelan*, 45 Wash.App. 812, 725 P.2d 1001, 1004 (Wash. App.1986). However, numerous jurisdictions by virtue of legislation now have civil service systems affecting the rights of deputy sheriffs. *See, e.g., Synder v. Cook*, 688 P.2d 496 (Utah 1984); *Hanifin v. Andrews*, 104 Misc.2d 381, 428 N.Y.S.2d 383 (N.Y.1979); *Civil Service Comm'n of New Orleans v. Foti*, 349 So.2d 305 (La.1977); *Hall v. Protan*, 158 W.Va. 276, 210 S.E.2d 475 (1974); *Metropolitan Government of Nashville & Davidson County v. Poe*, 215 Tenn. 53, 383 S.W.2d 265 (1964); *Lombardino v. Firemen's and Policemen's Civil Service Comm'n of San Antonio*, 310 S.W. 2d 651 (Tex.1958); *Manning v. Civil Service Comm'n*, 387 Pa. 176, 127 A.2d 599 (Pa.1956); *Willard v. Civil Service Bureau of Sioux Falls*, 75 S.D. 297, 63 N.W.2d 801 (1954); *Hayes v. Civil Service Comm'n of Chicago*, 348 Ill.App. 146, 108 N.E.2d 505 (1952).

Consequently, once a civil service system is enacted which affords protection to deputies from arbitrary dismissal, the sheriff's common law prerogative to discharge deputies at will is abrogated. For example, in

*Chelan, supra*, the court noted that while deputies served at the pleasure of the sheriff at common law, a duly enacted civil service system severely restricted the sheriff's power to discharge personnel. Thus the court concluded that, "[c]ontrary to common law, the sheriff can no longer discharge at will since those permanently appointed into the classified civil service can be removed or discharged only for cause." 725 P.2d at 1005. A similar result was reached in *Ison v. Zimmerman*, 372 So.2d 431 (Fla.1978), where a county sheriff argued that civil service laws were unconstitutional. The Court stated:

In light of the foregoing, we hold that special civil service acts do not unconstitutionally restrict the duties of the office of sheriff. We may dispose summarily of appellee's related contention that deputy sheriffs should not be protected by civil service. Appellee contends that deputies historically have been considered not employees but officers, imbued with some degree of the sovereign power of the sheriff's office. Therefore, appellee concludes a sheriff should have absolute control over his choice of deputies. However, we decline to approve judicially such a sweeping view of the sheriff's duties to retain his deputies.

372 So.2d at 435.

Consistent with the foregoing authorities, we conclude that the merit system here involved does not abridge the sheriff's right to appoint deputies.[11] Fundamental to our decision is the fact that the Idaho Constitution addresses only the right of the sheriff to "appoint" deputies, not a right to discharge them at will. Although it is beyond cavil that an enactment by the board of county commissioners cannot supersede the constitution, the merit system supplants only the unfettered common law

11. Respondents cite an unofficial opinion of the Attorney General in support of a contrary result. *See* Legal Guidelines of the Attorney General, December 12, 1979. Official opinions of the Attorney General are entitled to consideration, but are not binding. *Sandpoint Convalescent Services, Inc. v. Idaho Department of Health and Welfare*, 114 Idaho 281, 283, n. 4, 756 P.2d 398, 400, n. 4 (1988). The unofficial opinion of the Attorney General misconstrues our decision

in *Gowey v. Siggelkow, supra*, 85 Idaho 574, 382 P.2d 764 (1963). Indeed, as noted above, officials who appoint employees have an incidental common law right to dismiss appointees at their pleasure. However, as stated in *Gowey*, once the common law right to remove is restricted by law, the common law right to discharge employees at will is abrogated. 85 Idaho at 591, 382 P.2d at 776.

right of the sheriff to terminate deputies at will. The right *to appoint* is not offended.

Accordingly, we hold that a merit system which prohibits the dismissal of deputies and other employees without cause does not violate the sheriff's constitutional right to appoint deputies and other employees. *Question answered.*

No costs or attorney fees on appeal.

HUNTLEY and JOHNSON, JJ., concur.

BAKES, J., concurs in the result.

SHEPARD, Chief Justice, dissenting.

I disagree with the result obtained by the majority opinion, but even more with the means utilized to obtain that result. The majority opinion recognizes that the office of county sheriff is created not by statute, but by our Idaho Constitution. It is an elective office. The majority therefore suggests that the county sheriff indeed has the power to appoint deputies and other personnel to carry out the functions of the office of sheriff as directed by the elected official. What the majority gives with one hand, however, it immediately takes away with the other by its draconian pronouncement that the power to appoint can and is rendered a nullity because all positions are filled, and hence no appointments can be made. In my view such a ruling defies logic, and is contrary to the intent of our Constitution in designating the office of sheriff as a constitutional officer.

The majority opinion makes much of the provisions of the state employee personnel system as established by I.C. § 67–5301. There is much that the majority neglects in its description of that legislative scheme. As indicated in I.C. § 67–5301, a personnel system is established "for classified Idaho employees." I.C. § 67–5303 exempts from that system of personnel administration all employees and officers of the governor, lieutenant governor, secretary of state, state attorney general, state treasurer, state auditor, and state superintendent of public instruction. In short, the employees of state offices designated by the Constitution. Also exempted are all judges, tempo-rary referees, receivers, jurors, and all employees of this and the district courts. Also exempted are officers and members of the teaching staffs of state institutions, and a host of other state agencies. Today's opinion of the court that constitutional officers may employ whom they please, but may not terminate employees hired by predecessors in office, may come as a rude shock to those holding elective offices in the legislative, executive and judicial branches of Idaho's state government.

In my view, our legislature has instituted a personnel system directed toward stability in employment, which at the same time recognizes the constitutional mandate that certain elective officers must be free to institute and carry out their own programs with their own personnel. Such, I believe, is not only constitutionally mandated, but a recognition of the practicalities of political life. To argue that a constitutional office holder must maintain as trusted employees those very people who sought to prevent him from obtaining the office, begs reality. However, that is the effect of the majority ruling of today.

In my view, the legislature in its enumerated exemptions from the personnel act, has only recognized that which is constitutionally prohibited to it, *i.e.*, the invasion of the necessary authority of other constitutionally established officers of the state. I suggest that any inference of a spoils system in the instant case is inappropriate.

Although Gowey v. Siggelkow, 85 Idaho 574, 382 P.2d 764 (1963) did not deal with a constitutionally created office (in that case the chairman of a village board of trustees), nevertheless, the Court, as quoted by the majority, stated:

> Indeed, even where the power of removal is not expressly conferred, the general rule is that a grant of the power to appoint is construed to carry with it, by necessary implication, a grant also of the unconditional power to remove, if the term of office is not fixed by law and the right to remove is not in any other manner restricted.

85 Idaho at 591, 382 P.2d at 776.

Consistent therewith, I would hold, as does the majority, that the constitutionally

elected sheriff, as a necessary power of his office, is granted the power to appoint. Following therefrom is also the unconditional power to remove. To suggest, as does the majority, that one branch of county government, *i.e.*, the county commissioners, should be able to, and can, mandate who the constitutionally designated and publicly elected county sheriff will employ to carry out his constitutional duties and responsibilities, in my mind begs reality.

In the instant case the county commissioners have instituted a "personnel system" which in practical effect prohibits a constitutional officer, the sheriff, from hiring his own staff. If a county sheriff were to institute "security clearances" and thus inhibit employees of the county commission from entering the courthouse, we would undoubtedly peremptorily strike down such action. No less would we tolerate any action by the legislature attempting to circumscribe this Court's authority to hire our own employees.

Contrary to the assertions of the majority, the instant case has nothing to do with good government, or a corrupt or inefficient branch of government. Rather, it has only to do with the constitutional power of an elected official. To state that a constitutional officer may hire whom he pleases, but may not fire whom he pleases, I suggest flies in the face of logic and common sense.